### S. & F. DORR & CO. *vs.* WATSON & WOODHOUSE.

Where A. sued B. and his sureties, C. and D., upon a promissory note, and judgment by default was rendered against the principal (B.), but the sureties (C. and D.) defended the action, on the ground that the plaintiff had, by a binding contract, given further time of payment to the principal, which discharged the sureties. It was in proof, that the attorney of C. and D. had been informed by a witness who was privy to the contract of indulgence made between A. and B., that the agreement was embodied in a written transfer, held by A. and executed by B., by which he assigned a note executed by a third person as security for the note sued on, and as a part of that written agreement, A. bound himself to give further time to B.; and the attorney gave A. notice to produce the written transfer, which, when produced, was found not to contain the agreement for indulgence, it having been executed on a separate piece of paper, which was in the possession of B.; but it was too late to have it produced at the trial, judgment having been rendered in favor of A. *Held*, that this was such a case of surprise as justified the court below in granting a new trial.

The rule is well settled, that where a party or his counsel is taken by surprise on a material point or circumstance which could not reasonably have been anticipated, and when want of skill, care, or attention cannot be justly imputed, and injustice has been done, a new trial should be granted.

The granting of such new trial rests in the sound discretion of the court below.

If a new trial should be refused or granted, a strong case must be shown to authorize the appellate court to say it was error; but the latter should be entitled to greater indulgence.

In error from the circuit court of Claiborne county; Hon. Stanhope Posey, judge.

The plaintiffs in error filed their declaration in assumpsit to May term, 1845, against Evans as principal, and Watson

and Woodhouse as his sureties, upon a promissory note for $1,749.15.

The defendants in error pleaded the general issue; Evans, the principal, made no defence, and judgment by default was rendered against him.

At October term, 1848, the issue between the plaintiffs in error and the defendants in error was tried, and resulted in a mistrial.

At April term, 1849, the plaintiffs in error obtained a verdict. A new trial was granted to the defendants in error, to which the plaintiffs in error excepted.

At April term, 1850, a verdict was rendered in favor of the defendants in error. Upon this trial, no exceptions were taken.

The granting of a new trial, at the April term, 1849, is the error assigned by the plaintiffs in error. The bill of exceptions taken upon that occasion exhibits the following state of facts: it commences at p. 21 of the record.

Upon the trial of the cause, the plaintiffs read in evidence to the jury the note sued on, signed J. U. Evans, principal, Scott Watson, security, John Woodhouse, security, and payable to Foster & Easton, and by Foster & Easton, and Prescott, Jones & Co. indorsed to plaintiffs. Here they rested their case.

The defendants then read to the court a notice addressed to the plaintiffs or their attorneys, and executed upon their attorneys, requiring them to produce at the trial an article of assignment and agreement entered into some time in the latter part of the year 1839, between J. U. Evans and the plaintiffs, by which the said Evans assigned to the plaintiffs a note of T. H. Duggan & Co. and others; and the plaintiffs, in consideration thereof, bound themselves not to sue for one year upon the note sued on in this case.

The plaintiffs' attorneys then handed to the attorney of the defendants the following instrument, executed by Jesse U. Evans on the 28th of December, 1839, which the defendant's attorney read in evidence to the jury.

This instrument recites, that the said Evans, with Watson and Woodhouse as his sureties, on the 15th of May, 1838, executed to Foster and Easton his promissory note for $1,749.15, payable at the Commercial Bank of Rodney on the 1st Janu-

Dorr et al. *v.* Watson et al.

ary, 1839, on which there is a credit of $116.80; which note had been assigned to S. and F. Dorr & Co., and the payment of which, with interest, he, the said Evans, was desirous of securing to the said S. and F. Dorr & Co. In consideration thereof, and of the sum of one dollar, the said Evans then transferred and assigned to said S. and F. Dorr & Co. a promissory note of T. H. Duggan & Co., P. O. Hughes, and Thomas Scott, for $2,310.09, dated March 28, 1838, and payable twelve months after date, credited March 30, 1839, by $289.75; on which note suit was then pending, in the name of Evans, in the Jefferson circuit court, authorizing the said Dorr & Co. to prosecute said suit in his name, to the recovery of the money due thereon, for the use and benefit of the said Dorr & Co., and stipulating that the surplus of said note, after satisfaction of the note of Evans, Watson, and Woodhouse, was to be paid over to him (Evans).

The defendants then introduced G. H. Wilcox, Esq., as a witness. He testified that he thought that the foregoing instrument contained a covenant from the plaintiffs, that they would not sue on the note sued on in this case for twelve months from the date of said instrument, but that on the production of said instrument, he found that it contained no such covenant. His impression was, that there was such a covenant in writing, made by the same agent of the plaintiffs that received the foregoing instrument.

This was all the evidence. The jury, thereupon, returned a verdict in favor of the plaintiffs for $2,980.48.

The defendants Watson and Woodhouse, then entered a motion for a new trial, on the ground that they were taken by surprise upon the trial of the case, and were thereby prevented from making their defence to said suit.

In support of the motion for a new trial, the following affidavits were read to the court.

1. The affidavit of John B. Coleman.

Affiant states, upon oath, that he is the attorney of John Woodhouse and Scott Watson, two of the defendants in the above cause; that he was employed by Woodhouse to defend him shortly before the May term, 1845, and that he was employed by Watson to defend him on the eve of the April term,

1847; to which terms, respectively, the said defendants had been served with process. He states that the said Woodhouse and Watson are the sureties of Evans upon the note sued on in this case, and that their defence rested on the fact, that in consideration of the transfer by Evans, the principal in said note, to the plaintiffs, of a note of T. H. Duggan & Co., P. O. Hughes, and Thomas Scott, in favor of said Evans, for about $2,310.09, then in suit in the name of Evans in the Jefferson circuit court, the plaintiffs agreed with Evans, without the assent of either Woodhouse or Watson, that they would not sue on the said note of Evans, Woodhouse, and Watson for one year. He further states, that he was informed by both Woodhouse and Watson, at the times they respectively employed him, that they had understood that the agreement of the plaintiffs with Evans not to sue on said note, was embodied in the assignment made by Evans to plaintiffs of the note of Duggan & Co., Hughes and Scott; but as they had only recently received the information, they could not be positive on the subject, and they referred affiant for further information to J. U. Evans and G. H. Wilcox, Esq. Upon conversing on the subject with G. H. Wilcox, he (Wilcox) informed affiant that he was the attorney of Evans, and had brought suit for him in the Jefferson circuit court on the note of Duggan & Co., Hughes and Scott; that while said suit was pending, he (Wilcox) was called upon by Evans and a young Mr. Dorr, the agent of the plaintiffs, to draw an instrument of assignment, by which the said Evans transferred to the plaintiffs, as collateral security for said note of Evans, Woodhouse, and Watson, the note of Duggan & Co., Hughes and Scott, in favor of Evans, then in suit as aforesaid; and the plaintiffs, by their aforesaid agent, bound themselves, in consideration of said transfer, not to sue on said note of Evans, Woodhouse, and Watson, for one year from that time, which was somewhere in December, 1839; and that he accordingly drew up an instrument to that effect, which was then executed by the said Evans and the plaintiffs, by their said agent; and that neither Watson nor Woodhouse were present, nor, so far as he knew, did they assent to it, or even know of it. He also informed affiant that said instrument was in

the possession of the plaintiffs. Affiant also conversed with Evans, the principal in the note in suit in this case, who gave him about the same information with that communicated by Mr. Wilcox, and stated, in addition, that he had in his possession the receipt of the plaintiffs, by their agent, the said Dorr, for the note of Duggan & Co., Hughes and Scott, given at the same time the assignment was made, which receipt he proffered to send to this affiant, if he thought it would be useful to him in making his defence for his clients Woodhouse and Watson, but which this affiant told him he need not do, as it would be of no use to him.

This affiant further states that he is not the attorney of Evans, was not employed by him, and believes that Evans has made no defence to said suit. Affiant relying on the information thus communicated to him by Evans and G. H. Wilcox, notified his client Watson, who lives in the State of Louisiana, and Woodhouse, who resides in Claiborne county, that he would not require either their presence or assistance at the trial of said suit, as he would be able fully to prepare it himself. This affiant has, accordingly, prior to every term of this court, since this suit has been at issue, served upon Messrs. Thrasher and Sellers, the attorneys of plaintiffs, a written notice to produce upon the trial the instrument of assignment, in default of which, he would give evidence of its contents, and has had the said G. H. Wilcox, Esq., regularly subpœnaed as a witness to prove its contents. Affiant further states, that this cause was tried at the October term, 1848, of this court, and although he has been assured that said instrument of assignment was then in the possession of the plaintiff's attorneys, they failed to produce it, and this affiant accordingly examined Mr. Wilcox, who testified to the facts as hereinbefore stated by this affiant, as having been communicated by him to affiant. The jury not being able to agree, the case stood continued to the present term of this court.

Affiant further states that he went into the trial of said cause at this present term, with a full and undoubting conviction that said instrument of assignment contained an agreement on the part of the plaintiffs, in consideration of said assignment, not to sue upon the note in suit for one year from the date of said

instrument, which conviction was strengthened, if indeed it could be strengthened, by the failure of the plaintiff's attorneys to produce it on the former trial.  He was, therefore, taken completely by surprise when, after he had proved the notice to plaintiff's attorneys to produce said instrument of assignment, and after Mr. Wilcox had been sworn to give evidence, the attorneys of the plaintiffs produced said instrument of assignment, which was signed only by Evans, and contained no stipulation about giving time to Evans.  Affiant supposing that the agreement to give time must have been verbal, examined Mr. Wilcox, but he stating that he was positive that the agreement to give time was in writing, though he found he was in error in stating as he had done, upon the former trial, that it was embodied in the instrument of assignment, could not of course be allowed to testify until the absence of the said written agreement was legally accounted for.  This affiant was, therefore, unable to make any proof of his defence for the said Woodhouse and Watson, and the plaintiffs obtained a verdict against them. This affiant refers to the affidavit of G. H. Wilcox, Esq., and states further that he is now perfectly convinced that the receipt given by the plaintiffs by said Dorr to Evans, is the document which contains the agreement of the plaintiffs not to sue on said note of Evans, Woodhouse, and Watson, for one year.  That receipt affiant feels satisfied is now in the possession of said Evans, and that he will be able to procure it at the next term of this court.  He is informed that Evans now resides either in Yazoo county, or one of those adjacent to it, but has not been able to find his exact location ; and even if he could have done so, the said Evans lives at too great a distance to have enabled affiant's clients to have procured from him said receipt before the adjournment of this court.  Affiant believes that under all the foregoing circumstances no degree of diligence, either on his part or that of the said defendants Woodhouse and Watson, could have guarded against the surprise by which they were taken upon the production and contents of said instrument, and that neither he nor they were guilty of any laches.  Should a new trial be granted them, affiant feels confident that he will be able at the next term of this court to produce the agreement of

the plaintiffs not to sue on said note for one year, in consideration of said assignment, and to show that said Woodhouse and Watson, the sureties on said note, neither assented to, nor knew of said agreement.

2. The affidavit of G. H. Wilcox, Esq.

Affiant states upon oath that he was subpœnaed as a witness for defendants in this case. That he expected to testify that the note sued on in this action was held by the plaintiffs in the year 1839, and that to secure the payment thereof, said Evans assigned by deed to said plaintiffs, a note of Thomas H. Duggan & Co., Philip O. Hughes, and Thomas Scott, and that in said deed was contained a covenant from said plaintiffs, that they, said plaintiffs, would not sue on the note now sued on, for twelve months from the date of said deed of assignment; on the production of said deed of assignment, affiant finds that it contains no such covenant, and that it is executed by Evans only; but affiant's recollection is strong, that there was such a covenant or contract in writing, signed by said plaintiffs, by a young Mr. Dorr, their agent in the whole transaction. Since the trial of this cause, J. B. Coleman has exhibited to this affiant an extract of a letter from Evans to him (Coleman) which refers to a receipt given by the said young Dorr to said Evans, for the note so assigned to plaintiffs as aforesaid, which receipt is stated to be in the handwriting of affiant. Although affiant does not remember drawing such a receipt, he does remember that there was a contract in writing to give time on the note sued on, and he thinks that contract will be found embodied in the receipt above referred to. Affiant further states that he had repeatedly assured Coleman that the said contract for stay was embodied in said deed of assignment, and probably thereby misled him in the defence that he would otherwise have made in this case.

Upon the foregoing state of facts, the court below granted the defendants a new trial.

Upon a second trial of the cause the jury found a verdict for the defendants, and Dorr & Co. prayed a writ of error to this court.

*Thrasher* and *Sellers*, for appellants.

We think it manifest that if the defendants were surprised on the trial, that they were surprised by their own negligence; and that the court erred in setting aside the verdict for that cause. The record contains none of the evidence on either trial, except the note sued on, which is all-sufficient to sustain the verdict.

As early as the case of *Moore* v. *Ayres*, 5 S. & M. R. 310, this court decided that where a new trial had been granted at law, in which the first verdict was correct, and a bill of exceptions had been taken to the grant of the new trial, and a second trial had been had, and a verdict adverse to the first had been rendered, that this court would set aside the last verdict, and uphold the first.

And again, in the case of *Thomason* v. *Agnew*, 24 Miss. R. 93, Thomason, the captain of a steamboat, was sued in trespass for damages done to the defendant's wharf-boat in carelessly and negligently landing a steamboat against it. On the first trial the jury found a verdict in favor of Thomason; but a new trial was granted, and a bill of exceptions setting out the evidence was taken to the order granting the same. On the second trial a verdict was found against Thomason; but none of the evidence was set out in the bill of exceptions contained in the record. The only error assigned was, the granting of a new trial.

The surprise complained of in this case is, that after the cause had been pending before the court for trial four years, and one mistrial had taken place, that the defendants' counsel served the plaintiffs' counsel with a notice to produce, on the trial of the cause, an assignment of the note of T. H. Duggan & Co., containing an agreement not to sue on this note for one year; and that when said assignment was produced on the trial, it contained no agreement not to sue.

No agreement not to sue was ever produced, or ever accounted for. The assignment produced on the trial, according to the notice, had been acknowledged, and was of record in the probate court, and open to the inspection of the defendants

since December, 1839, a period of nine years, and was a paper rightly in the possession of the plaintiffs; but the agreement not to sue, if any such ever existed, should have been in the possession of the defendant Evans, to be of any value; and the defendants had no right or reason to suppose that it had ever been delivered to the plaintiffs. They were not the proper persons to have the custody of such an agreement, if any such ever existed.

Evans was a defendant in the cause, and had been served with process, and the affidavit of the attorney, Coleman, which was read on the motion for the new trial, discloses the fact that he had, during the pendency of the suit, had an interview with Evans respecting the nature of the defence; but it does not appear from the affidavit, that he inquired of Evans for the agreement, in whose possession it ought to have been. The truth is, that no such agreement can be presumed to have existed. The note of T. H. Duggan & Co. was transferred, as collateral security only. But if any such agreement ever did exist, then the record discloses such an unparalleled and inexcusable degree of negligence on the part of the defendants and their counsel in procuring it, or in laying the foundation to admit parol evidence of the contents, as to render the order of the circuit court granting the new trial clearly erroneous.

A court will never grant a new trial to admit evidence which might have been produced by exercising ordinary diligence. 5 Wend. R. 127.

It does not appear from the affidavits, that any search or inquiry was ever made for the agreement, either of Evans, the plaintiffs, or their attorney. The records of the probate court would have disclosed to them what kind of agreement the plaintiffs held; and a moment's reflection would have convinced them that if any such agreement existed, that it could not be in the hands of the plaintiffs or their attorney.

To entitle the party to a new trial on the ground of surprise, he must show merits, and the surprise must be of such a character as care and prudence could not provide against. The slightest negligence will defeat the application for a new trial. *Thompson* v. *Williams*, 7 S. & M. R. 270; 4 Binn. R. 481.

And it must clearly appear that justice has not been done. 7 S. & M. R. 715.

*John B. Coleman*, for appellees.

From the whole testimony it is very clear that the appellees could not possibly have been otherwise than surprised, and greatly surprised too, when, upon the production of the instrument, it turned out that no such agreement was embodied in it. We submit, that if the testimony was not a case of surprise, it would be difficult to imagine one to which the term will apply.

Were they taken by surprise on a material point or circumstance, which could not reasonably have been anticipated?

The point upon which they were surprised was certainly material, for it was the point on which, and on which alone, their defence depended, and on which, at the next trial, they defeated the plaintiffs. It was the proof of an agreement by the plaintiffs with their principal, upon a valuable consideration, to give one year's indulgence to the principal, without their consent.

Could this surprise have been reasonably anticipated? We think we have already shown that it could not have been, even by the most cautious and suspicious of men. There was nothing to raise suspicion; no hook on which to hang a doubt. The evidence of the agreement was positive, and came direct from the fountainhead. ·

Can want of skill, care, or attention be justly imputed to them? ·

We are unable to discover any deficiency on their part, in either of these respects. Their case was fully prepared upon the lights they had before them; and we are not aware of a single omission of which they had been guilty.

Evans was not subpœnaed by them, for the reason that his evidence would have been inadmissible, he being a party defendant to the suit. Evans was not present at the trial, and took no interest in it, as he had long before suffered judgment to go against him by default. The receipt, which contained the agreement to give time, was in his possession; and he being in Yazoo county, one hundred and fifty miles off, there was no possibility of the defendants procuring the receipt, after

its necessity was discovered, before the adjournment of the court. This is shown by the affidavit of Coleman. There was no want of care or attention in not having the receipt at court; for until the production of the deed of assignment upon the trial, the defendants had no suspicion that the receipt contained the agreement to give time. They could not, in any way, be chargeable with notice of its contents, because they had never had it in their possession, had never seen it, and had no right to its possession or control. Evans was the only party chargeable with notice of its contents, and he has no interest in this controversy, and his knowledge cannot charge or affect these defendants.

Was injustice done the defendants by the verdict rendered against them at April term, 1849?

Great and manifest injustice was done them; for by no want of care or attention on their part they were deprived of a clear and valid defence, and a verdict rendered against them for a debt which they were not legally liable to pay.

In 1 Nott & McCord, R. 33, the court say: " The object of granting new trials is, that justice may be done between the parties; and when the court clearly sees that a case has not been fairly tried upon the merits, and that, without the fault of the party, justice and reason require that a new trial should be granted."

In the case at bar the court below saw clearly that the case had not been fairly tried upon the merits, and that without the fault of the defendants; and it therefore without hesitation granted them a new trial. We submit, that the decision of the court below was in accordance with law, with reason, and with justice; and going back to the principle laid down by Graham, and by which we are willing to stand or fall, we further submit, that these defendants and their counsel were taken by surprise, by accident, on a material point or circumstance, which could not reasonably have been anticipated; and when want of skill, care, or attention could not justly be imputed to them, and that injustice was done them by the verdict and judgment, which were set aside by the court.

Mr. Justice HANDY delivered the opinion of the court.

The plaintiffs in error brought this action in the Claiborne circuit court, on a promissory note, against one Evans, principal, and the defendants in error, sureties.

Judgment by default was rendered against the principal, and the sureties defended on the ground that the plaintiffs had, by a binding contract, given further time of payment to the principal, which discharged them as sureties. At April term, 1849, a verdict was rendered for the plaintiffs, which upon motion of the defendants in error, was set aside, and a new trial granted on the affidavits of witnesses showing surprise; and to this, the plaintiffs in error took their bill of exceptions, setting out the evidence. Upon the new trial, a verdict and judgment were rendered for the defendants in error, to which no exception or objection was made, and none of the evidence introduced on that trial is presented in the record.

The ground of error complained of is, that the former verdict was set aside, and a new trial granted.

The evidence upon which the motion was granted is in substance, that the attorney for these defendants in the court below had been informed, by a witness who was privy to the contract for indulgence made between the plaintiffs and Evans, that that agreement was embodied in a written transfer held by the plaintiffs and executed by Evans, by which Evans assigned a note executed by third persons, as security for the note sued on, and as part of the written agreement; the plaintiffs bound themselves to give further time to Evans. Relying on this information, which was derived from such a source as to be entitled to full confidence, the attorney gave notice to the plaintiffs to produce the written transfer, and it was accordingly produced on the trial; when it was found that the written transfer did not contain the agreement for indulgence. It was then found that the agreement for indulgence was contained in a separate writing, signed by the plaintiffs and in the possession of Evans; but it was too late to have it produced on the trial. It appears that, from the positive information given to the defendants' attorney, and which was derived from a respectable attorney, who had drawn up the writings between the

Dorr et al. *v.* Watson et al.

plaintiffs and Evans, the defendants' attorney relied implicitly upon the fact that the writing in the plaintiffs' possession, and required to be produced on the trial, would show the contract for indulgence, and therefore took no steps to obtain further evidence on the point. Upon these circumstances of surprise, the new trial was granted.

We think this was a case of surprise that justified the court in granting the new trial.

The rule is well settled, that where a party or his counsel is taken by surprise, on a material point or circumstance, which could not reasonably have been' anticipated, and when want of skill, care, or attention cannot be justly imputed, and injustice has been done, a new trial should be granted. Graham on New Trials, 169; *Jackson* v. *Warford*, 7 Wend. 62; 1 Nott & M'Cord, 33.

This would be the rule, even if the court had refused the motion for a new trial, and would probably in such case have entitled the defendants to a reversal. It applies with much more force to the present case, when the new trial was granted.

The granting a new trial rests in a great measure upon the sound discretion of the court below, to be exercised under all the circumstances of the case with reference to settled legal rules as well as the justice of the particular case. If a new trial be refused, a strong case must be shown to authorize the appellate court to say that it was error; and so, if it be granted, it must be manifest that it was improperly granted. Indeed, it would seem that the latter would be entitled to the greater indulgence, inasmuch as it is not a final decision of the case, and the party against whom it is granted, still has an opportunity to assert his rights on the new trial.

But if, as in this case, the granting of the new trial is proved to have been just and proper by the result of the case upon the new trial, without objection by the party against whom the new trial was granted to the verdict on the second trial, it affords a strong reason that the new trial was properly granted, and that it was necessary for the purposes of justice.

The judgment is affirmed.