# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-01493-SCT

### CONSOLIDATED WITH

## NO. 97-CA-01535-SCT

*JOSEPH AMIKER AND BOBBIE AMIKER*

*v.*

*DRUGS FOR LESS, INC., AND STAN MIXON*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/10/1997 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | BARRY W. GILMER |
| ATTORNEY FOR APPELLEES: | WALTER T. JOHNSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 08/17/2000 |
| MOTION FOR REHEARING FILED: | 8/31/2000; denied and opinion modified at paragraph 3 10/11/2001 |
| MANDATE ISSUED: | 10/18/2001 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case arises from a claim of misfilled prescriptions by a pharmacist and his pharmacy employer. These appeals are from an order by a successor judge which reversed in part the order of the original judge granting a new trial and ordering sanctions for discovery abuse. Because we find that the successor judge was in no better position to decide the issues in this case than the original judge, we reverse and remand.

### I.

¶2. Joseph and Bobbie Amiker claim that Stan Mixon, while employed as a pharmacist with Drugs For Less, Inc. in Jackson, Mississippi, misfilled Joseph Amiker's prescriptions. Between October 3, 1992, and April 22, 1993, anti-depressants were allegedly erroneously substituted for the prescribed hypertension and heart medications. The Amikers claim that as a direct result Joseph's blood pressure elevated, and he suffered a stroke which rendered him permanently disabled. In April 1994 the Amikers filed their complaint in the Circuit court of the First Judicial District of Hinds County seeking recovery of damages from Mixon and Drugs For Less for their alleged negligence. Both Mixon and Drugs For Less were simultaneously represented by the same attorneys throughout all aspects of this litigation. At the conclusion of the trial, the jury returned a verdict in favor of both Mixon and Drugs For Less.

¶3. The present assignments of error do not concern the issue of whether Mixon or Drugs For Less did, in fact, negligently misfill Joseph Amiker's prescriptions. Rather, this case on appeal concerns apparent discovery violations committed by Mixon and Drugs For Less. The Amikers allege numerous violations which unfairly impeded their efforts to prove negligence. Two of the alleged violations are of primary concern. The Amikers allege that Drugs For Less deliberately withheld information concerning the limits of its liability insurance coverage, perpetuating the Amikers' belief that the policy's coverage was $1 million when, in fact, it was in excess of $30 million. This revelation only came about through an in-camera examination by the trial judge, Circuit Judge William F. Coleman, of Drugs For Less's files. Second, and more importantly, not until the fourth day of trial did Drugs For Less produce evidence of prior claims of negligence in filling prescriptions even though Drug For Less had been repeatedly ordered to do so by the court. After the jury returned its verdict and final judgment was entered, the Amikers filed their Motion for a Judgment Notwithstanding the Verdict and Motion for a New Trial and renewed an earlier Motion for Sanctions, all of which were based on these alleged discovery violations. The trial court entered an Opinion and Order on these motions which we quote in part:

> In this Court's opinion, the only issue that has merit is the issue of discovery violations and it is indeed a very serious one. [D]iscovery violations by the defense occurred from the initial beginning of the discovery and continued through the actual trial, despite repeated orders from the court to furnish specific discovery matters. . . . The plaintiffs' counsel was remiss in not presenting written orders after every discovery hearing to carry out the Court's rulings. The Court must speak through its minutes. Montalvo vs. Miss. State Bd of Medical Licensure, 92-CC-01338-SCT (Decision Issued March 14, 1996). Unfortunately, discovery problems as well as motion practice has increased to become an administrative nightmare mandating bench rulings with no system of tracking for written orders for the minutes. In this case, the defense attorneys were aware of the court's rulings and their testimony itself indicates that the employees of the defendant Drugs for Less were aware of the Court's rulings, but failed to respond.

> There is no question that Drugs for Less disobeyed this court's order to produce discovery. By way of explanation for their failure when brought into court by court order, the defendant's employees began a round robin finger-pointing scenario contending the insurance claims service were [sic] expected to produce the discovery. The employees of the claims service in turn pointed back to the defendants' employees. Even though this establishes no valid excuse for discovery violation, the close relationship of defendant Drugs for Less with the claims service and the insurance agent completely eliminates this from consideration. The testimony of the employees reveals an attitude of "Drugs for Less is in the business of producing sales and not producing discovery." The failure to furnish timely discovery clearly deprive[d] plaintiffs of the opportunity to evaluate and develop evidences not produced until well into the trial and only after orders from the court requiring individual employees of the defendant to be present in court to furnish this information. This failure on the part of Drugs for Less requires that the Motion for New Trial be granted.

> Plaintiffs also moved for sanctions against defendant Drugs for Less for these discovery violations. Clearly, plaintiffs are entitled to sanctions. The issue is the extent of the sanctions.

> ...The Mississippi Supreme Court has not addressed the issue of the extreme sanctions of default judgment for discovery violations. Courts from other jurisdictions have approved the entry of judgment against a discovery violator. See: Henry vs. Sneiders, 490 F.2d 315 (9th Cir. 1974);

Billman vs. State of Maryland Deposit Insurance Fund Corp., 585 A. 2d 238 (Md. App. 1991); Malautea vs. Suzuki Mtr. Corp., 987 F. 2d 1536 (11th Cir. 1993); Hawes Firearm Company vs. Edwards, 634 P.2d 377 (Alaska 1981). The Mississippi Supreme Court has approved the extreme sanctions of dismissal of a plaintiff's lawsuit for discovery violations by the plaintiff's attorney. Cunningham vs. Mitchell, 549 So. 2d 955 (Miss. 1989).

Many of the cases were faced with discovery violations by a party's attorney. That is not the situation in the present case. There is no proof that defendants' attorneys were responsible for the violations. The defendant Drugs for Less was well aware of this Court's order to produce records of prescription mis-filling claims and failed to do so. In addition, Drugs for Less deliberately refused to furnish applicable insurance policies after being ordered to do so. Although having no bearing on the liability issue of this case, this discovery violation reveals a total disregard for the discovery rules and this court's authority. The failure to furnish the policies is especially egregious by the fact that the defendants were aware that the plaintiffs' attorneys had received a copy of the primary coverage policy, and relying on that information had made settlement offers for the policy limits. It is quite clear that at all times the defendants knew that not one, but several policies were in existence that placed coverage well above the primary coverage. The first time plaintiffs' attorneys were aware of this information was when advised by this court in open court at a point well into the trial. The court became aware of this fact while making an *in camera* inspection during the trial of the defense attorneys' file on an unrelated discovery matter.

The willful and deliberate violation has prejudiced plaintiffs by delay and expense. In addition, the defendant has caused significant problems with court administration-waste of the court's time weeks trial time on the court's docket and disregard for this court's authority.

These discovery violations must fall at the feet of Drugs for Less. The actions of the individual defendant, Stan Mixon, although participating to a small degree in the violations, does not rise to the necessary height of willfulness.

**Therefore, judgment of liability will be entered in favor of the plaintiffs against Drugs for Less only.**

Thus, the trial court (1) set aside the judgment based on the jury verdict, (2) granted a judgment of liability against Drugs for Less, (3) granted the Amikers a new trial against Mixon as to liability and damages and against Drugs for Less as to damages only, and (4) awarded the Amikers reasonable and necessary attorney's fees of $51,542.94 against Drugs For Less.

¶4. Mixon and Drugs For Less then filed a Motion to Reconsider this Order in December 1996. Judge Coleman denied this motion. They subsequently petitioned this Court for Permission to Perfect an Appeal from the Order granting the Amikers a new trial and imposing sanctions upon Drug For Less. These petitions were denied on May 16, 1997. While the Petitions for Permission to Appeal were pending, Judge Coleman retired. Circuit Judge W. Swan Yerger was appointed to fill the vacancy created by Judge Coleman's retirement and was assigned this case.

¶5. On July 7, 1997, Mixon filed his second Motion to Reconsider. Drugs For Less filed its second Motion to Reconsider on July 16, 1997. The hearing on these motions was held on August 20, 1997. At the conclusion of the hearing, Judge Yerger rendered his Opinion and Order which vacated Judge Coleman's

1996 Orders. Judge Yerger's Order granted the Amikers a new trial as to Drugs For Less but did not impose a judgment of liability as Judge Coleman had done. Furthermore, the Final Judgment in favor of Stan Mixon was reinstated and certified as final judgment pursuant to M.R.C.P. 54(b). The trial court also ordered Drugs For Less to pay the Amikers' reasonable attorney's fees and expenses in the sum of $51, 542.94 in accordance with Judge Coleman's earlier order imposing the same as an additional sanction.

¶6. Subsequently, the Amikers filed their Notice of Appeal from the Final Judgment entered in favor of Stan Mixon. In addition, the Amikers filed their Petition for Permission to Appeal with this Court which was granted on December 10, 1998. On February 17, 1999, the Amikers' interlocutory appeal from the Opinion and Order entered against Drugs For Less was consolidated with their appeal from the Final Judgment entered in favor of Stan Mixon.

## II.

¶7. The pertinent issues here are questions of law. Our standard of review is de novo in passing on questions of law. *In re Bodman*, 674 So. 2d 1245, 1247 (Miss. 1996); *Rea v. Breakers Ass'n, Inc.*, 674 So. 2d 496, 499 (Miss. 1996); *Harrison County v. City of Gulfport,* 557 So. 2d 780, 784 (Miss. 1990); *Cole v. National Life Ins. Co.,* 549 So. 2d 1301, 1303 (Miss. 1989).

## III.

¶8. The Amikers' first assignment of error, in essence, claims that a successor judge does not possess the power to vacate an initial judge's order granting a new trial and issuing sanctions for discovery violations which came to light in the trial. We first examine the question whether vacating the order granting a new trial as to Stan Mixon was proper.

¶9. Rule 63(b) of the Mississippi Rules of Civil Procedure states:

> If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned . . . then any other judge regularly sitting in or assigned under law to the court in which the action was tried may perform those duties . . . .

¶10. Our holdings in *Mauck v. Columbus Hotel Co.*, 741 So.2d 259 (Miss. 1999) and *Love v. Barnett*, 611 So.2d 205 (Miss. 1992) provide some guidance on this issue, but we must look at the position of the successor judge in this case.

¶11. In *Mauck*, in upholding the successor chancellor's authority to vacate the initial chancellor's pretrial order denying motions to dismiss or, alternatively, for summary judgment, we stated that "[a]s a general rule, a successor judge is precluded from correcting errors of law made by his predecessor or changing the latter's judgment or order on the-merits, *but this rule does not apply where the order or judgment is not of a final character*." *Mauck*, 741 So.2d at 268 (quoting 48A C.J.S. *Judges* § 68, at 654 (1981)) (emphasis added). We went on to state that Chancellor Colom not only had the authority to vacate Chancellor's Brand ruling but was also "duty bound to apply the law to the record then before the court, regardless of any prior ruling . . . ." *Mauck*, 741 So.2d at 268-69.

¶12. This case does not present the situation which we faced in *Mauck*. There, the first judge denied a pretrial motion to dismiss or for summary judgment. Obviously, such a ruling was subject to change at the time that the case was finally submitted, even if no facts had changed. The standard for granting a motion to

dismiss or one for summary judgment is simply different from the standard to be applied by a judge rendering judgment at the time that the case is finally submitted.

¶13. The different standard is not the only distinction, however. A judgment of dismissal or summary judgment is based upon the application of legal principles to undisputed facts. In such circumstances a successor judge is in a position equivalent to that of the original judge. There is usually no abuse of discretion under Rule 63(b) in making a different call. That call does not involve consideration of the testimonial evidence from the stand point of making credibility choices with regard to witnesses. By definition the material facts are not in dispute. Where, however, a new trial is at issue, the facts must be in dispute; otherwise there would be no reason for a new trial.

¶14. More relevant to the present case is our decision in *Love v. Barnett*, 611 So.2d 205 (Miss. 1992). There, we held that a successor judge who did not have access to a transcript of the previous hearing, did not conduct an additional hearing and did not gain the consent of both parties could not modify the bench ruling of the initial judge. *Id*. at 208. Accordingly, we found the modifications by the successor chancellor to be arbitrary and capricious based on the fact that he did not review the transcript of the case, conduct an additional evidentiary hearing or gain the consent of both parties. *Id*.

¶15. In the present case, Drugs For Less and Mixon filed Motions to Reconsider in response to Judge Coleman's June 19, 1996, and December 10, 1996, orders for a new trial. Judge Coleman denied those motions. Both then petitioned this Court for leave to take an interlocutory appeal to this Court. Those petitions were denied. While those petitions were pending, Judge Coleman retired, and Judge Yerger was appointed to fill the vacancy. After this Court denied the Petitions for Interlocutory Appeal, Drugs for Less and Mixon then filed a second Motion to Reconsider, this time with Judge Yerger presiding. Judge Yerger vacated Judge Coleman's order and made his own ruling on the motions. That ruling reinstated the jury verdict in favor of Mixon and granted a new trial as to Drugs For Less. However, Judge Yerger did not impose a judgment of liability against Drugs For Less as a sanction for its egregious discovery violation. Instead, he found it suitable to order Drugs For Less to pay the Amikers' reasonable attorney's fees and expenses and court costs.

¶16. It has long been recognized that the trial judge is in the best position to view the trial. "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire."*Gavin v. State*, 473 So.2d 952, 955 (Miss. 1985). Using a cold, printed record of a case, if that, a successor judge sits in an inferior position to the judge who presided over the trial of the case.

¶17. Where the presiding trial judge grants a new trial, not specifically and solely based on a particular legal error such that we can say that the judge's view of the credibility of the witnesses played no part in the decision, a successor judge is in no position to review and change that order. To do so would be an abuse of the discretion granted the successor judge under M.R.C.P. 63.

¶18. "It has been said that on such a motion [for a new trial] the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir.1971) (quoting Wright, Federal Practice & Procedure: Criminal § 553, at 487).

¶19. Of course, when the original judge is not available someone must go forward with the trial. Our rules contemplate such an occurrence. M.R.C.P. 63. With respect to a prior order granting a new trial, based, at least in part, on observations made during trial, however, deference should be given to the judge who observed the evidence as it was presented. "[O]n the motion for a new trial the presiding judge of that court, who had heard the testimony and observed the demeanor of the witnesses on the stand, was better qualified to pass on that question...." *Illinois Cent. R. Co. v. Humphries*, 170 Miss. 840, 155 So. 421, 424 (1934).

¶20. In a case similar to the case at bar, the Georgia Supreme Court held that it was an abuse of discretion for a successor judge to retract a predecessor's grant of a new trial. *Head v. CSX Transp., Inc.*, 524 S.E.2d 215, 218 (Ga. 1999)("[T]he scope within which the discretion may be exercised, in the consideration of the evidence, by a judge who did not preside at the trial is not as extensive as in the case of the judge who heard and observed the witnesses and who, in a sense, is to be considered the thirteenth member of the jury.")(quoting *Throgmorton v. Trammell*, 83 S.E.2d 256, 258 (Ga. Ct. App. 1954)).

¶21. If we allowed a successor judge to change a decision granting a new trial, we would invest power in one in no better position than this Court to do what this Court does not do. This Court justifiably refuses to review grants of a new trial based in part on the superior position of the trial court to decide such matters. *Dorr v. Watson*, 28 Miss. 383, 395 (1854)("The granting a new trial rests in a great measure upon the sound discretion of the court below, to be exercised under all the circumstances of the case with reference to settled legal rules as well as the justice of the particular case. If a new trial be refused, a strong case must be shown to authorize the appellate court to say that it was error; and so, if it be granted, it must be manifest that it was improperly granted."). *See also Rayner v. Lindsey*, 243 Miss. 824, 832-33, 138 So.2d 902, 905-06 (1962). Surely, a successor trial judge is in no better position than this Court.

¶22. Judge Yerger was the lawful successor to Judge Coleman and the only judge in a position to hear the merits of the second Motion to Reconsider. However, this did not give Judge Yerger unbridled discretion. Accordingly, we hold that a successor judge does not possess the power to vacate an initial judge's order granting a new trial where, as here, the successor judge sits in an inferior position to the first judge.

## IV.

¶23. The Amikers' final assignment of error concerns whether Judge Yerger abused his discretion in determining the sanctions to be imposed against Drug For Less for its discovery violations. The Amikers claim that the granting of a new trial is not a sanction but rather simply the granting of their Motion for a New Trial based on the discovery violations. In other words, Judge Yerger's order granting a new trial is not a sanction against Drugs For Less. The Amikers also contend that Judge Yerger's order that Drugs For Less pay the Amikers' attorney's fees and expenses of litigation, which totaled $51,524.94, is not a sanction. The only sanction imposed upon Drugs For Less, the Amikers argue, is the order to pay the expenses incurred by Hinds County in impaneling two separate juries. M.R.C.P. 37(b) prescribes sanctions for the failure to make or cooperate in discovery.

¶24. The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. *White v. White*, 509 So.2d 205, 207 (Miss. 1987). The provisions for imposing sanctions are designed to give the court great latitude. *Id*. at 207. The power to dismiss is inherent in any court of law or equity, being a means necessary to the orderly expedition of justice and the court's control of its own docket. *Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So.2d 1346, 1367 (Miss.1990).When this Court reviews a decision that is within the

trial court's discretion, it first asks if the court below applied the correct legal standard. *Burkett v. Burkett*, 537 So.2d 443, 446 (Miss. 1989). If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made. *Id*. This Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Cooper v. State Farm Fire & Cas. Co.*, 568 So.2d 687, 692 (Miss.1990).

¶25. Rule 37(b) of the Mississippi Rules of Civil Procedure governs when and what sanctions a trial court may impose upon a party who has failed to comply with orders regarding discovery. Further, Rule 37(e) generally authorizes the trial judge to issue sanctions appropriate to the transgression. It reads in part:

> In addition to the application of those sanctions, specified in . . . other provisions of this rule, the court may impose upon any party or counsel *such sanctions as are just . . . .*

M.R.C.P. 37(e).

¶26. The Amikers' principal concern is Judge Yerger's decision not to impose a judgment of liability upon Drugs For Less as a sanction for its discovery violations. Judge Coleman's order had imposed a judgment of liability.

¶27. Consistent with our foregoing reasoning concerning the grant of new trial, we conclude that Judge Yerger was in no superior position to grant sanctions different from Judge Coleman's order. Greater sanctions than what Judge Coleman awarded were available and considered, but Judge Coleman chose to only assign liability to Drugs for Less, award attorney's fees to the Amikers and grant a new trial. Being mindful that it was Judge Coleman who "smelled the smoke of th[is] battle ," Judge Yerger had no authority to vacate Judge Coleman's orders in this regard. Judge Yerger merely supplanted Judge Coleman's discretion with his own. While nominally accepting the facts found by Judge Coleman, Judge Yerger engaged in some fact finding of his own and obviously he weighed facts to reach his ultimate conclusion. This he was not in a position to do. Judge Coleman's decision is free from facial legal error, whether his discretion was abused is a decision to be made at the proper time by this Court.

## CONCLUSION

¶28. For the foregoing reasons, we reverse the order of Judge Yerger, we reinstate Judge Coleman's June 19 and December 10, 1996, orders and we remand this case to the Hinds County Circuit Court for further proceedings consistent with this opinion and Judge Coleman's orders.

¶29. **REVERSED AND REMANDED.**

> **PRATHER, C.J., PITTMAN, P.J., WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J.**

> **McRAE, JUSTICE, SPECIALLY CONCURRING:**

¶30. I concur with the majority that Judge Yerger had **no** authority to vacate Judge Coleman's prior orders and final order and that the sanctions issued by Judge Coleman imposing liability on Drugs for Less were

well reasoned and appropriate given the defendant's blatant discovery violations. We took away a $500,000 verdict in *Pierce v. Heritage Properties, Inc.*, 688 So.2d 1385 (Miss. 1997), because the plaintiff committed discovery abuses and said there were no witnesses when in fact there was one witness with her when the fan fell from the ceiling. The actions of the plaintiff there were not as severe as the actions of the defendant in this case. What is sauce for the goose is sauce for the gander. Accordingly, I concur.

¶31. As to the issue of Judge Yerger's overruling Judge Coleman, I agree with the majority. Judge Yerger's orders, if they had been allowed to stand, would have placed him with even greater authority than this Court. Additionally, I agree that Judge Coleman's initial order should be reinstated and that the sanctions granting a new trial to the plaintiffs and assigning liability to Drugs for Less were appropriate. Our discovery rules that require parties to seasonably supplement. The Amikers made not one, but **nine requests** for the information regarding the prior claims of misfilled prescriptions and insurance policies, and the trial court *ordered* **production of that information on four separate occasions**, all to no avail. Judge Coleman's order stated:

> There is no question that Drugs for Less disobeyed this court's order to produce discovery.... The failure to furnish timely discovery clearly deprive plaintiffs of the opportunity to evaluate and develop evidence not produced until well into the trial and only after orders from the court requiring individual employees of the defendant to be present in court to furnish this information.

¶32. Judge Yerger's decision to relieve liability from Drugs for Less and reinstate the jury's verdict as to Mixon was a total abuse of discretion. If the jury had the benefit of the evidence of the **four hundred** prior claims withheld by Drugs for Less, their verdict as to both parties may have been different. The discovery violations of Drugs for Less were clear and continuous and illustrated a blatant disregard for the court's authority throughout the course of the case. It was not until the fourth day of the actual trial that Drugs for Less complied with the trial court's orders to produce the requested information. Undoubtedly the Amikers were severely prejudiced in their ability to prepare for trial. These violations were extreme. Furthermore, the apparent disdain which the Drugs for Less and their attorney showed toward our judicial system is absolutely appalling and should not be tolerated in our courts of law.

¶33. Judge Coleman's sanction of liability was justified. Affirming sanctions ordered by Judge Yerger of attorney's fees and awarding a new trial, it would make this Court and the trial court's ability to sanction such behavior a "Toothless Tiger." Merely requiring a new trial on both damages and liability would, in effect, even reward the defense counsel since he would continue to be paid on an hourly rate. The defense lawyer still gets paid hourly for all the delaying tactics and hearings to compel, etc. He would not only reap the benefits of more than five years of hourly fees, with Judge Yerger's "sanctions" he would have the promise of more. The defendant was able to avoid the truth from being discovered and gained tremendous tactical advantage at trial.

¶34. The sanctions available to a trial judge under Rule 37(b)(2) are designed to give great latitude in enforcing orders and encourage the parties to heed the rules of the court. Judge Coleman was correct and well within his authority to assign liability to Drugs for Less for their blatant discovery violations. The actions of Drugs for Less are far greater than those of the plaintiff in *Pierce*, where this Court affirmed an even greater sanction, dismissing and taking away the plaintiff's judgment of $500,000 for discovery violations. 688 So.2d at 1385; *see also* *Scoggins v. Ellzey Beverages, Inc.*, 743 So.2d 990, 996 (Miss. 1999) (imposing dismissal as the most appropriate sanction); *Gilbert v. Wal-Mart Stores, Inc.*, 749 So.2d 361,

364 (Miss. Ct. App. 1999). In *Pierce*, we adopted the Fifth Circuit's holding in ***Batson v. Neal Spelce Assocs., Inc.***, 765 F.2d 511, 514 (5th Cir. 1985) in evaluating the appropriateness of dismissal as a sanction for discovery violations. 688 So.2d at 1389. We held that,

> [D]ismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Id.* at 1389 (citations omitted). Further, we must examine the intentional or willful nature of the offending party's actions as well as the pattern of their conduct. We held that, "[a] willful violation of a discovery rule occurs when there is a conscious or intentional failure to comply with the rule's requirements. A finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations. While the severest of sanctions should be reserved for extreme circumstances, the district court does not abuse its discretion by imposing the sanction of dismissal when a party demonstrates flagrant bad faith and callous disregard for its responsibilities." *Id.* at 1390 (citing ***Medina v. Foundation Reserve Ins. Co.***, 117 N.M. 163, 870 P.2d 125, 126 (1994)), *see also* ***National Hockey League v. Metropolitan Hockey Club***, 426 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)("[T]*he most severe sanctions provided by statute or rule must be available to a trial court in appropriate cases, not just to penalize those whose conduct may warrant such sanction, but to deter those who might be tempted to engage in such conduct in absence of a deterrent.*") (emphasis added).

¶35. Drugs for Less's actions were willful and in blatant disregard of repeated orders by the trial court to produce the information. Greater sanctions, such as a complete default judgment against Drugs for Less, were considered and discarded. Lesser sanctions alone are not appropriate either. Assigning even a large award of attorney's fees does not begin to provide an answer to the problem, nor would awarding a new trial as to liability. Those sanctions merely allow Drugs for Less to buy an indulgence for their actions and go back and actually play by the rules rather than reprimand such indifference to this Court's authority and procedure. The defendants continuously ignored the trial court's orders. "*[T]he most severe sanctions provided by statute or rule must be available to a trial court in appropriate cases, not just to penalize those whose conduct may warrant such sanction, but to deter those who might be tempted to engage in such conduct in absence of a deterrent*."*Pierce*, 688 So.2d at 1389 (citing ***National Hockey League***, 426 U.S. at 643, 96 S.Ct. at 2781 (emphasis added)). Judge Coleman chose to assign only liability to Drugs for Less, award attorney's fees to the Amikers, and grant a new trial as to both parties to determine damages and liability of Mixon. It is clear that the discovery violations were not due solely to the negligence of the attorney nor were they due to a misunderstanding of a request or the court's order. The Amikers made requests for the information on no less than nine separate occasions, and the court entered four orders directing Drugs for Less to comply. It appears that there is probable cause that the Mississippi Bar should be required to investigate and make a determination of the conduct of the attorney.

¶36. In ***Square D Co. v. Edwards***, the plaintiff failed to supplement interrogatories regarding the opinion

of an expert witness. 419 So.2d 1327, 1329 (Miss. 1982); *see also* **Harris v. General Host Corp.**, 503 So.2d 795, 798 (Miss. 1987). Here the defendant gets to use any resource available to it. The actions of Drugs for Less, as stated above, actually meet the criteria for granting a greater sanction under Rule 37(b)(2), a default judgment (the opposite of the dismissal with prejudice), but the award contemplated by Judge Coleman is not an abuse of discretion and should therefore be upheld by this Court.

¶37. I concur with the majority that Judge Yerger had no authority to vacate Judge Coleman's orders and that Judge Coleman did not abuse his discretion in the sanctions he imposed upon Drugs for Less. Judge Yerger merely supplanted Judge Coleman's discretion with his own and, in doing so, exercised even greater power than this Court enjoys. Further, I agree that the sanctions contemplated by Judge Coleman were not an abuse of discretion, especially since greater sanctions could have been imposed. The trial court or Mississippi Bar, however, should revisit what sanctions should be assessed against the defense attorney, since his egregious conduct has thus far gone unpunished. He still got rewarded on an hourly basis for his conduct. Perhaps the same sanction should be applied against the attorney here as in **Pierce v. Heritage,** and that is to order that he receive no attorney's fees in this case. Drugs for Less may have been adequately sanctioned, but the defense counsel who was involved with or responsible for the discovery is rewarded with the promise of continued litigation fees in the next trial. If the shoe were on the other foot, that would not be the case. What is sauce for the goose is sauce for the gander. Accordingly, I concur.

## DIAZ, J., JOINS THIS OPINION.

## MILLS, JUSTICE, DISSENTING:

¶38. The majority concludes that Judge Yerger did not have the authority to vacate Judge Coleman's ruling. I disagree and, therefore, respectfully dissent.

¶39. The majority believes that this case does not present the situation which we faced in **Mauck v. Columbus Hotel Co.**, 741 So. 2d 259 (Miss. 1999), when, in fact, the procedural dynamics of **Mauck** are virtually identical to the ones in the case sub judice. As the majority notes, in **Mauck** we upheld the successor chancellor's authority to vacate the initial chancellor's ruling stating that, "[a]s a general rule, a successor judge is precluded from correcting errors of law made by his predecessor or changing the latter's judgment or order on the-merits, *but this rule does not apply where the order or judgment is not of a final character*."**Mauck**, 741 So. 2d at 268 (quoting 48A C.J.S. *Judges* § 68, at 654 (1981)) (emphasis added). Unlike the majority, I believe the judgment changed by Judge Yerger was not "of a final character." *See also* **Fortune v. Lee County Bd. of Supervisors**, 725 So. 2d 747, 752 (Miss. 1998) ("An interlocutory judgment . . . leaves for future determination an equity of the case, or some material question connected with it. A judgment is interlocutory, as opposed to final, only when something further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties. Accordingly, where further action of the court is necessary to give a complete adjudication upon the merits, the judgment under which the further question arises is to be regarded, not as final, but as interlocutory.") (quoting 46 Am. Jur. 2d *Judgments* § 202 (1994)). In my opinion, when the present case is analyzed according to this language from **Fortune**, Judge Yerger's actions fall within the exception to the general rule stated in **Mauck**.

¶40. The majority places Judge Yerger in the same category with the chancellor in **Love v. Barnett**, 611 So. 2d 205 (Miss. 1992). I believe that, unlike the successor chancellor in **Love**, Judge Yerger meets the criteria we presented in that case. Judge Yerger not only possessed the lawful power to vacate Judge

Coleman's orders but also was "duty bound" to do so if he saw fit. *Mauck*, 741 So. 2d at 268-69. The record shows that Judge Yerger correctly reviewed the existing record, conducted a hearing, and heard arguments from both sides. While he did not gain an express, on-the-record "consent" from both parties to hear the matter as mentioned in *Love*, both parties did wilfully and voluntarily participate in the hearing, making the issue of consent irrelevant.

¶41. The Amikers contend that the law of the case doctrine should bind Judge Yerger to Judge Coleman's initial Order especially in light of the fact that the Defendants' Petitions for Interlocutory Appeal were denied by this Court. The majority did not address this argument presumably because it is without merit. The law of the case doctrine only applies to issues which arise out of a final judgment. *Mauck*, 741 So.2d at 268. As noted previously, a denial of a Petition for Interlocutory Appeal is not a final judgment on the merits of a case. *Id*. We further stated in *Mauck*: "This court's denial of such a petition may be for any of a number of reasons largely unrelated to the perceived merits of the order sought to be appealed from, particularly in the context of interlocutory appeals from orders granting new trials." *Id*. (quoting *Gallimore v. Missouri Pac. R.R.*, 635 F.2d 1165, 1168-69 (5th Cir. 1981)). The suggestion that a denial of a petition for interlocutory appeal somehow constitutes the "law of the case" therefore is erroneous. *Mauck*, 741 So. 2d at 268. This Court's denial of Drugs For Less's Interlocutory Appeal of the denial of its motion to reconsider did not establish any law of the case.

¶42. The Amikers argue that Judge Coleman's order granting a new trial itself became the law of the case such that Judge Yerger could not vacate that order. The Amikers assert that this issue of whether the law of the case doctrine is applicable in trial courts when judges are changed before the completion of the trial is a question of first impression. Indeed, it is, but it is a misplaced question inasmuch as the law of the case doctrine is plainly not applicable here at all. Before Judge Coleman retired, Drugs For Less and Mixon made a motion for the court to reconsider the order granting a new trial. Judge Coleman denied this motion. After Judge Yerger was appointed to replace Judge Coleman, Drugs For Less and Mixon filed a second motion to reconsider. They were well within their rights in filing a second motion. The fact that a different judge would have to rule on the second motion did not affect the defendants' ability to bring it. Had Judge Coleman remained on the bench, the right of Mixon and Drugs for Less to file a second motion to reconsider would not have been affected adversely. Judge Coleman would still be obligated to issue a ruling on the defendants' motion. As such, Judge Yerger was obligated to consider and issue his own order on the second motion to reconsider, assuming, of course, that he first met the conditions established in *Love*. Neither the grant of the new trial nor Judge Coleman's subsequent denial of the defendants' motion to reconsider became the law of the case. Accordingly, this argument is without merit.

¶43. The majority finds that Judge Yerger exercised "unbridled discretion" in vacating Judge Coleman's order granting a new trial. I am of the opinion that Judge Yerger did not abuse his discretion in reinstating the jury verdict in favor of Mixon. On the contrary, I believe his decision is in harmony with the case law on the subject.

¶44. The standard of review for jury verdicts in this state is well established. This Court has stated the standard as follows: "Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found." *Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 76 (Miss. 1996) (quoting *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 660 (Miss.1985)).

¶45. The jury in this case unanimously found that Mixon did not negligently misfill Mr. Amiker's prescription. The record supports the verdict reached in this case. In my opinion, we cannot reasonably conclude that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.

¶46. I find no abuse of discretion in Judge Yerger's determination of the sanctions to be imposed against Drugs For Less for its discovery violations. As the majority states, the power to dismiss is inherent in any court of law or equity, being a means necessary to the orderly expedition of justice and the court's control of its own docket. *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1367 (Miss.1990). Nevertheless, the trial court should dismiss an action for failure to comply with discovery only under the most extreme circumstances. *Hapgood v. Biloxi Reg'l Med. Ctr.*, 540 So. 2d 630, 634 (Miss.1989); *White v. White*, 509 So. 2d 205, 209 (Miss. 1987).

¶47. As the majority notes, the Amikers' principal concern is Judge Yerger's decision not to impose a judgment of liability upon Drugs For Less as a sanction for its discovery violations. Judge Coleman's order had imposed a judgment of liability, though it is clear from the record that his decision to do so was not easily made. Judge Yerger noted Judge Coleman's admitted hesitation in his own order.

¶48. There is no question that Drugs For Less committed egregious discovery violations. The record shows that Drugs For Less blatantly and repeatedly refused to comply with the court's orders to provide information to the Amikers of other claims of misfilled prescriptions. Also, it is clear from the record that Drugs For Less perpetuated the Amikers' belief that it had a liability insurance policy with a coverage limit of only $1 million when, in fact, the limit of its liability coverage was in excess of $30 million. Drugs For Less did not comply with either of these discovery requests until midway through the trial. These are flagrant violations by both Drugs For Less and its attorney. The apparent disdain which these two showed toward our judicial system is absolutely detestable and must not be tolerated in our courts of law. Nevertheless, having said that, I believe that in reviewing Judge Yerger's sanctions we must adhere to our statement in *White*, 509 So. 2d at 209, that dismissal is proper only where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. *Id*. We further stated that "dismissal for discovery violations is a 'draconian' remedy or 'remedy of last resort,' only to be applied in extreme circumstances." *Id*. Of course, a judgment of liability would also be classified as "draconian" and as such should only be used in extreme circumstances as well. The record and order show that Judge Yerger took this admonition into account in fashioning the sanctions against Drugs For Less. Judge Yerger found that less drastic sanctions were available in this case and that they would serve as an effective deterrent against future violations. As a result of these sanctions, Drugs For Less will have to undergo a second trial, pay the Amikers' attorney's fees and costs, and pay the court costs. Judge Yerger noted, "[t]hese are severe sanctions in themselves." I agree. The sanctions as issued by Judge Yerger do not constitute an abuse of discretion. They were issued after a complete and thorough review of the record, an evidentiary hearing, and argument from both parties. I cannot say that the trial court abused its discretion. For the foregoing reasons, I respectfully dissent.

**SMITH, J., JOINS THIS OPINION.**