CHANDLER, J.,
for the Court.
¶ 1. Lucretia Antoinette White was found guilty of aggravated assault upon Albert Johnson, III on August 17, 2005. White cut Johnson across his chest and upper right arm during an altercation at Johnson’s home. White was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections, with ten years to serve, five years suspended, and five years on post-release supervision. She was also fined $2,500 and ordered to pay $4,639.81 in restitution to the Crime Victims’ Compensation Fund. Aggrieved, White appeals, arguing:
I. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. WHETHER THE COURT’S SENTENCE WAS GROSSLY DISPROPORTIONATE AND UNCONSTITUTIONAL.
FACTS
¶ 2. On September 11, 2004, Johnson and a few friends held a cookout at Johnson’s house. White discovered that she had not been invited and went to the house. White and Johnson had been involved “off and on” romantically for approximately ten months. They had been involved in prior disputes. When White arrived at the party, she noticed a couple of females in Johnson’s bedroom. White and Johnson proceeded to argue, wherein White slashed at Johnson with an object attached to her keychain. Johnson was cut across his chest and upper right arm. A friend from the party took Johnson to the hospital where he received numerous stitches in his arm and surgical staples in his chest.
¶ 3. Initially, Johnson did not wish to press charges against White. He said that he and White had “talked and worked *292 everything out.” The police allowed the matter to drop at that time. One month later, however, Johnson returned to the police station and told an officer that he had changed his mind and wanted to file charges against White. White was subsequently charged with aggravated assault.
¶ 4. White was indicted in January 2005 for aggravated assault. The indictment charged that White cut Johnson with “a sharp instrument” across Johnson’s “chest and upper right arm.” She was convicted of aggravated assault on August 17, 2005.
¶ 5. At trial, no witness could attest to what the sharp object was and no one saw White actually cut Johnson. However, one witness said that he saw White make a “hand motion” and that Johnson was subsequently bleeding and stated, “this b — - done cut me.” Johnson testified that he was bleeding after the argument, but he did not describe how the cuts occurred and the record indicates he never saw White with any weapon. Another witness stated that White admitted to cutting Johnson. White denied making any inculpatory statements. She was convicted.
LAW AND ANALYSIS
I. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 6. White argues that the evidence does not support a conviction for aggravated assault because there were no eyewitnesses to prove what exactly happened between Johnson and White and no one actually saw White with a weapon. White was convicted of aggravated assault pursuant to section 97-3-7(2) (Rev.2006), which states in pertinent part:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the Penitentiary for not more than twenty (20) years.
¶ 7. White contends that Johnson choked her during their argument and a sharp object from her key chain must have cut Johnson as she was trying to stop him from throttling her. She also maintains that even if she did attack Johnson, there was no evidence that she intended to do him grievous bodily harm, which is required under the aggravated assault statute. On appeal, White also states that Johnson’s cuts were inflicted purely by accident, involving no criminal intent. However, White did not raise an “accidental” defense until this appeal.
¶ 8. It is well settled that the jury is the sole arbiter for matters involving the weight and credibility to be accorded the evidence. Spicer v. State, 921 So.2d 292, 311(¶ 38) (Miss.2006). We will reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that “reasonable and fair-minded jurors could only find the accused not guilty.” Id.
¶ 9. When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Herring v. State, 691 So.2d 948, 957 (Miss. *293 1997). We have stated that, on a motion for a new trial, the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000). The evidence should be weighed in the light most favorable to the verdict. Herring, 691 So.2d at 957.
¶ 10. Here, no new trial is warranted because we find that the evidence, when weighed in the light most favorable to the verdict, supports the jury’s resolution of the conflicting testimony.
¶ 11. Seven witnesses testified on behalf of the State during its case-in-chief, including the victim, Johnson, and Linda Quarles, a friend of White’s, who testified about inculpatory statements made by White. White went to Quarles’s apartment after the altercation with Johnson. According to Quarles, White admitted to cutting Johnson. However, White denies making any such inculpatory statement.
¶ 12. Johnson testified that during their argument, White swung at him and it “felt like she had punched me in the chest.” He then noticed blood on White’s hand and told her that she was bleeding. She responded, “No, you’re bleeding.” Johnson looked down and saw blood pouring down his arm. When White saw the blood, she left the house. Later that night, Johnson met with White outside of Quarles’s apartment. He stated that over the course of their conversation, White admitted to cutting him. White apologized and when asked why she cut Johnson, she replied that she “lost her mind” when “she thought the females ... were putting on a freak show for me.”
¶ 13. Johnson further stated that he changed his mind about pressing charges against White when she threatened him approximately one month after the altercation. She called Johnson and told him not to press charges against her or she would “f— me up on sight” and “[t]his time I’m going to kill your a-.”
¶ 14. Another partygoer, Robert “Pops” Bell, testified that he observed White and Johnson argue on the front porch and saw a “hand motion” from White during the argument. Afterwards, Johnson came back inside and said, “this b.done cut me.” When Bell opened up Johnson’s shirt, blood began to pour out of Johnson’s chest. Bell stated that he never heard Johnson threaten White or make any threatening gestures towards her.
¶ 15. On the record, the weight of the evidence presented by the State supported the jury’s verdict. Accordingly, we find that the trial court did not err in overruling White’s motion for a new trial. We find that the evidence presented does not preponderate heavily against the verdict. Therefore, this argument is without merit.
II. WHETHER THE COURT’S SENTENCE WAS GROSSLY DISPROPORTIONATE AND UNCONSTITUTIONAL.
¶ 16. White contends that the court mandated an unduly harsh sentence that does not pass constitutional muster. While White acknowledges that the trial court may exercise discretion in sentencing as long as the term does not exceed the maximum allowed by statute, she asserts that her sentence constitutes reversible error given the circumstances of this case. We disagree.
¶ 17. The trial court sentenced White to fifteen years, with ten to serve and five years of post-release supervision. Twenty years is the maximum sentence that can be imposed for an aggravated assault. Miss.Code Ann. § 97-3-7(2). As a general rule, sentencing is within the *294 trial court’s discretion and will not be disturbed on appeal if the sentence is within the term provided by statute. Davis v. State, 724 So.2d 342, 344(¶ 7) (Miss.1998). However, a sentence that is “grossly disproportionate” to the crime committed is subject to attack on Eighth Amendment grounds. Id.
¶ 18. We do not find White’s sentence to be “grossly disproportionate” to the crime committed. The fifteen-year sentence, with ten to serve and five years of post-release supervision, was well within the statutory guidelines. The trial court noted that aggravated assault is a very serious crime. The court also considered the fact that White had a relatively clean record, with no prior felony convictions, and that White had been consistently employed. The trial judge is in the best position to hear and evaluate the relevant evidence, and we can find nothing in the record to indicate that an abuse of discretion occurred. Accordingly, we affirm the trial court’s sentence.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS, WITH FIVE YEARS SUSPENDED, TEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, TO PAY A FINE OF $2,500 AND RESTITUTION OF $4,639.81 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.