LEE, P.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On January 16, 2009, a jury in the Washington County Circuit Court found Shae Hughes guilty of Count I, armed robbery, and Count II, aggravated assault. Hughes was sentenced to serve forty years on the armed-robbery charge and twenty years on the aggravated-assault charge. The trial court ordered the twenty-year sentence to run consecutively to the forty-year sentence, with both sentences served in the custody of the Mississippi Department of Corrections. The trial court subsequently denied Hughes’s post-trial motions.
112. Hughes now appeals, asserting the following issues: (1) the State failed to prove the crimes charged in the indictment; (2) the trial court erred in failing to grant his motion for a directed verdict; (3) the State failed to prove the facts beyond a reasonable doubt; and (4) the trial court erred in failing to grant his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. As all of Hughes’s issues are related, we find it appropriate to address his issues as follows: (1) whether the evidence was suffi- *528 dent to support the guilty verdict and (2) whether the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS
¶ 3. On October 13, 2006, Roscoe McCoy was at a gas station in Leland, Mississippi, and was attempting to find a ride to Greenville, Mississippi. McCoy was told by Nathaniel Winder that he could ride with someone driving a white Grand Am. McCoy got in the back passenger side of the car. McCoy did not know the driver of the car or any of the other passengers. It was later determined that Hughes was the driver of the Grand Am. The other passengers included Hughes’s girlfriend, who was seated in the front passenger seat; Terika Cartlidge, who was seated behind Hughes; and Darían Hughes, who was seated in the middle of the backseat.
¶ 4. McCoy testified that at one point during the drive, Hughes stopped the car, opened the door, and grabbed McCoy by his shirt. At the same time, Darían pushed McCoy out of the car. McCoy stated that Hughes then pressed a gun to McCoy’s forehead and demanded money. At that point, Darían searched McCoy’s pockets and took his shoes. McCoy was able to take approximately twenty dollars, gum, and lip balm from his pocket and keep it in his fist during the altercation. Unable to find any money, McCoy then heard Hughes say, “I’m going to shoot this MF anyway.” Hughes then shot McCoy in the chin. After Hughes drove away, McCoy was able to walk to a nearby house where the police and emergency services were contacted. McCoy stayed in the hospital for two weeks and had to undergo several operations. McCoy was able to identify Hughes and Darían after watching security tapes retrieved from the gas station where McCoy got into the white Grand Am.
¶ 5. Cartlidge, who is related to Hughes, testified that when McCoy and Darían began fighting, Hughes stopped the car and pulled both men out of the backseat. Cartlidge stated that she heard a gunshot but could not see what had happened because the car door was closed. However, Cartlidge told the police that she saw Hughes rob and shoot McCoy.
¶ 6. Winder testified that he told McCoy to catch a ride with Hughes. Winder stated that he saw McCoy approach Hughes and show him some cash. Winder thought it looked as if Hughes was asking to be paid for driving McCoy to Greenville.
¶ 7. Officers with the Washington County Sheriffs Department responded to the crime scene. Officer Mack White testified that he followed the trail of blood McCoy had left to the initial crime scene. Officer White found a twenty-dollar bill, a one-dollar bill, and lip balm on the ground.
DISCUSSION
I. SUFFICIENCY OF THE EVIDENCE
¶ 8. Hughes argues that the evidence was insufficient to support a guilty verdict. Our standard of review in regard to challenges to the sufficiency of the evidence is well settled. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existedf.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the conviction. Id. If we find that *529 reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient. Id. Although Hughes makes general arguments concerning the legal sufficiency of the evidence, we will discuss the armed-robbery conviction and the aggravated-assault conviction.
¶ 9. Pursuant to Mississippi Code Annotated section 97-3-79 (Rev.2006), “[e]very person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....” McCoy testified that Hughes pointed a gun to his head and demanded money. Cartlidge made a statement to the police that she saw Hughes rob and shoot McCoy.
¶ 10. In regard to the aggravated-assault charge, Mississippi Code Annotated section 97-3-7(2) (Supp.2009) states that a person is guilty of aggravated assault if he “attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.... ” McCoy testified that Hughes shot him in the face, and Cartlidge told the police that she saw Hughes shoot McCoy.
¶ 11. Hughes’s argument in regard to this issue concerns discrepancies in statements made by McCoy and Cartlidge. However, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997). From the evidence presented, reasonable jurors could have found Hughes guilty of armed robbery and aggravated assault. This issue is without merit.
II. OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 12. Hughes also argues that the verdict is against the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). When reviewing the weight of the evidence, this Court sits as a “thirteenth juror.” Id.
¶ 13. Hughes’s argument in regard to this issue is the same as his argument concerning the previous issue, namely that there were discrepancies in witnesses’ testimonies. As previously stated, the jury resolved any conflicts in the evidence in favor of the State.
¶ 14. Viewing the evidence in the light favorable to the verdict, we find that the verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.
¶ 15. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF FORTY YEARS AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
*530 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND MAXWELL, JJ.