# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01505-COA

**MARLON LITTLE**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/02/2014 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | NICKITA SHANTA BANKS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOSEPH SCOTT HEMLEBEN |
| | JASON L. DAVIS |
| | BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY, AND SENTENCED TO THIRTY YEARS; AND CONVICTED OF FELON IN POSSESSION OF A FIREARM, AND SENTENCED TO TEN YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | REVERSED AND REMANDED FOR A NEW TRIAL - 11/22/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Marlon Little appeals his convictions for armed robbery and felon in possession of a

firearm. At trial, the only substantive evidence presented by the State was the victim's eyewitness testimony. Little argues that the victim's initial description of the assailant to police was so inconsistent with Little's actual physical attributes that the verdict was against the weight of the evidence, requiring reversal. We agree and reverse and remand for a new trial.

## FACTS AND PROCEEDINGS BELOW

¶2.     On October 31, 2013, nurse practitioner Danny Ellis was robbed at gunpoint shortly after closing his Port Gibson office for the day. Ellis testified that the robber jumped him from behind and wrestled him to the ground. Ellis hit the attacker in the side of the head with his laptop. The robber put his knee in Ellis's chest and held a pistol to his face, demanding his wallet. The man was wearing a hoodie with the string pulled tight across his chin. The upper portion of the hoodie obscured a portion of the attacker's face. Ellis had never seen the man before. After the man took Ellis's wallet and left, Ellis walked to the police station and reported the robbery to Port Gibson's chief of police, Calvin Jackson. Initially, Ellis described the man who attacked him as a clean-shaven, stocky African American male in his mid-to-late twenties.

¶3.     The police received a tip from an informant identifying Little as a suspect. Based on this tip, Jackson, who was familiar with Little, put together a seven-photo lineup on November 4, 2013, to show to Ellis. Ellis identified the man in the fourth photo, Little, as the man who had robbed him. Ellis testified that he recognized Little in part because the attacker had pronounced nasolabial folds. Little was the only person in the photo lineup with

2

pronounced nasolabial folds. Little is forty years old, tall and thin, with gold teeth, and normally wears a goatee. The police did not conduct any investigation other than presenting Ellis with the photo lineup. The gun and the wallet were never recovered.

¶4.     Little was indicted in April 2014.[1] The trial was held less than a month later on May 13, 2014. The morning of trial, the court denied a previously filed defense motion for a continuance requesting more time to find Little's alibi witness. A subpoena for the witness was issued the day before trial. Little's attorney also argued in the motion to continue that her contact with her client had been limited due to his being committed to a transitional home by his parole officer, and that more time was needed to prepare a defense.

¶5.     Police Chief Jackson testified for the State, recounting the course of the police investigation. Ellis testified for the State, identifying Little as the person who had robbed him at gunpoint. The defense did not call any witnesses. Several witnesses the defense had intended to call either did not show or could not be found in time for trial.

¶6.     Little's motion for a new trial was denied. He appeals.

## DISCUSSION

¶7.     The sole argument Little makes on direct appeal is that the evidence against him was so minimal and contradictory that his conviction was against the weight of the evidence, requiring reversal.[2] "When reviewing a denial of a motion for a new trial based on an

---

[1] In January 2014, the grand jury initially no-billed the charges.

[2] The brief filed by Little's attorney notes that several arguments, such as ineffective assistance of counsel, would be best preserved for postconviction-relief review in the event that Little's conviction were affirmed on direct appeal. Little filed a supplemental pro se brief raising multiple issues (including an alibi defense), all of which would not be

objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). The Court sits as a "thirteenth juror," and if it "disagrees with the jury's resolution of the conflicting testimony," the proper remedy is to grant a new trial. *Id*. "[T]he evidence should be weighed in the light most favorable to the verdict." *Id*.

¶8. The testimony of an uncorroborated witness can be sufficient to sustain a conviction. *Renfro v. State*, 118 So. 3d 560, 565 (¶22) (Miss. 2013); *Pritchett v. State*, 134 So. 3d 857, 860-61 (¶11) (Miss. Ct. App. 2014) (finding the preponderance of the evidence did not weigh heavily against the jury's verdict where the victim immediately recognized the defendant in a photographic lineup and had accurately described the defendant's appearance to a detective prior to being shown the lineup). However, the reliability of an eyewitness identification is lessened when the description initially given to police is inconsistent with the subsequent lineup identification of a defendant. *See Williams v. State*, 98 So. 3d 468, 472 (¶16) (Miss. Ct. App. 2012) (the factors used to determine reliability of a lineup identification include the accuracy of a witness's prior description of the criminal).

¶9. In *Bush*, a victim initially told police that the masked man who had robbed the convenience store she worked at had a slit above his left eye and that he might have a gold tooth. *Bush*, 895 So. 2d. at 841 (¶8). She later identified the defendant, Bush, as the robber, even though Bush did not have a scratch or scar above his left eye and did not have a gold

appropriate for review on direct appeal.

4

tooth. *Id*. The Mississippi Supreme Court stated that "[w]ere this conflicting evidence the only substantive proof the State presented to the jury, perhaps Bush's argument for a new trial would have merit." *Id*. at 845 (¶19). However, additional evidence against Bush included the eyewitness testimony of a coconspirator, a purported unrecorded confession Bush made to police, and a security video consistent with the version of events told by the victim, the coconspirator, and Bush in his purported confession. *Id*.

¶10.    Similar to the testifying victim in *Bush*, the victim here gave an initial description of the assailant that was inconsistent with the defendant's actual physical attributes, including age and build. But unlike in *Bush*, the State here presented no substantive proof to support Little's guilt other than the victim's testimony identifying Little as the assailant. We have here the exact situation the Mississippi Supreme Court identified as potentially meritorious in *Bush*.

¶11.    We find, on the facts of this case, that the weight of the evidence preponderates heavily against the verdict where the sole substantive proof presented at trial was the testimony of the victim identifying the defendant, and the victim's initial description of the attacker to the police was inconsistent with that identification. We therefore reverse and remand for a new trial.

## CONCLUSION

¶12.    Because the only substantive proof presented at trial of Little's guilt was the victim's identification of Little, and that identification was inconsistent with the initial description given to police, we find that the verdict was against the weight of the evidence and that a new

5

trial is warranted. We therefore reverse and remand.

¶13. **THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAIBORNE COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR AND WILSON, JJ. JAMES, J., NOT PARTICIPATING.**

**GRIFFIS, P.J., DISSENTING:**

¶14. The majority, sitting as a "thirteenth juror," has determined that an eyewitness's testimony is not sufficient evidence to sustain the jury's verdict to convict Little. The decision to remand could present a unique dilemma for the trial judge. Suppose that on remand, just before a new trial is held, the prosecutor and the defense attorney meet with the trial judge and say: "Your Honor, we have the exact same evidence to offer at this trial as the last. Based on the Court of Appeals' ruling, if the same evidence results in a guilty verdict, you will be obligated to grant a new trial." They would be right. This case could be retried until a jury acquits the defendant. Thus, I am puzzled by the majority's decision to remand the case for a new trial.

¶15. Nevertheless, I disagree with the majority's decision to reverse Little's conviction. First, I address the standard of review. Second, I address my analysis.

¶16. I disagree with using the "thirteenth juror" rationale in the standard of review. In *Hughes v. State*, 43 So. 3d 526 (Miss. Ct. App. 2010), I joined Judge Larry Roberts's specially concurring opinion. Judge Roberts, who was a very experienced circuit judge, addressed his concern with "the often-used characterization of an appellate court's role when

6

reviewing the weight of the evidence — namely our self-assigned role of the 'thirteenth juror.' It is a moniker I could not disagree with more." *Id.* at 530 (¶16) (Roberts, J., specially concurring). Judge Roberts reasoned:

> My review of this state's jurisprudence on the matter shows that the first appearance of "thirteenth juror" used by a Mississippi appellate court in the context of an appellate court's role in a review of the weight of the evidence was in *McQueen v. State*, 423 So. 2d 800 (Miss. 1982). In *McQueen*, the Mississippi Supreme Court quoted a lengthy passage from *Tibbs v. Florida*, 457 U.S. 31 (1982), in which the United States Supreme Court discussed the procedural consequences and differences between reversing a conviction based upon insufficiency of the evidence and the weight of the evidence. *McQueen*, 423 So. 2d at 803-04 (quoting *Tibbs*, 457 U.S. at 41-45). In so doing, the Supreme Court stated that "a reversal based upon the weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Tibbs*, 457 U.S. at 42. Post *McQueen*, the phrase was bounced around in the opinions of the supreme court, and later, this Court, before ultimately settling as a favorable description of an appellate court's role. But the Supreme Court never used the phrase "thirteenth juror" again.
>
> Nine years after *McQueen* was handed down, the supreme court again used the phrase. However, this time it was much less favorable and tended to disagree with *Tibbs*. The supreme court stated: "The appellate court's role is to see that there is a fair trial given to both sides. We are not result oriented. The supreme court will not be the thirteenth juror." *Walker v. Graham*, 582 So. 2d 431, 433 (Miss. 1991). This sentiment was continued over the next several years as "thirteenth juror" was singularly used in a number of dissents in a negative connotation describing the role the dissenting author believed the majority was incorrectly filling. *See Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So. 2d 1186, 1193 (Miss. 1994) (McRae, J., dissenting); *Lloyd Wood Constr. Co., Inc. v. Little*, 623 So. 2d 968, 974 (Miss. 1993) (McRae, J., dissenting); *Stonecipher v. Kornhaus*, 623 So. 2d 955, 967-68 (Miss. 1993) (McRae, J., dissenting); *New Hampshire Ins. Co. v. Sid Smith & Assocs., Inc.*, 610 So. 2d 340, 348 (Miss. 1992) (McRae, J., dissenting); *State Highway Comm'n of Miss. v. Hyman*, 592 So. 2d 952, 958 (Miss. 1991) (McRae, J., dissenting).
>
> Then, in *Allen v. State*, 749 So. 2d 1152, 1159 (¶19) (Miss. Ct. App. 1999),

this Court, reciting the standard of review utilized when reviewing a denial of a motion for a new trial, stated that: "It has been said that on a motion for new trial the trial court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the trial court." This language and standard, implying that the trial court is the theoretical "thirteenth juror," was echoed time and time again.

This all led us to the current use of the term as first penned in *Bush v. State*, 895 So. 2d 836 (Miss. 2005). There the supreme court quoted *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942 (Miss. 2000) and stated: "On a motion for a new trial the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844 (¶18). This passage was interpreted for the proposition that "when the trial court (and subsequently the appellate court) reviews a verdict that is alleged to be against the overwhelming weight of the evidence, this presents a distinctive situation which necessitates the court sitting as a "thirteenth juror." *Id.* at 844 n.2. The *Bush* court, labeling itself as a "thirteenth juror," then resolved the issue of whether Kanynne Jamol Bush's conviction was supported by the weight of the evidence by beginning its conclusion with "sitting as a limited 'thirteenth juror' in this case." *Id.* at (¶19). But *Amiker* simply does not mandate or otherwise suggest that it is proper for an appellate court to sit, review the evidence, and make a judgment call of credibility and other matters germane to the role of a juror.

In *Amiker*, the central issue was whether a successor judge could vacate his predecessor's order granting a new trial. *Amiker,* 796 So. 2d at 946 (¶8). In arriving at the conclusion, the supreme court in *Amiker* stated:

> It has long been recognized that the trial judge is in the best position to view the trial. "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire." *Gavin v. State*, 473 So. 2d 952, 955 (Miss. 1985). Using a cold, printed record of a case, if that, a successor judge sits in an inferior position to the judge who presided over the trial of the case.

*Id.* at 947 (¶16). Further, it was identified that:

8

> If we allowed a successor judge to change a decision granting a new trial, we would invest power in one in no better position than this Court to do what this Court does not do. This Court justifiably refuses to review grants of a new trial based in part on the superior position of the trial court to decide such matters. *Dorr v. Watson*, 28 Miss. 383, 395 (1854) ("The granting [of] a new trial rests in a great measure upon the sound discretion of the court below, to be exercised under all the circumstances of the case with reference to settled legal rules as well as the justice of the particular case. If a new trial be refused, a strong case must be shown to authorize the appellate court to say that it was error; and so, if it be granted, it must be manifest that it was improperly granted."). *See also Rayner v. Lindsey*, 243 Miss. 824, 832-33, 138 So. 2d 902, 905-06 (1962). Surely, a successor trial judge is in no better position than this Court.

*Id.* at 948 (¶21). I do not find these pronouncements can form the basis for the establishment of an appellate court as a "thirteenth juror" when reviewing the denials of motions for a new trial as surmised in *Bush* and utilized in the litany of cases following it (including cases from this Court—some even authored by myself). In fact, *Amiker* successfully pleads the case for the alternative and only reestablishes that it is the trial court alone that can fill the role of "thirteenth juror."

The role of an appellate court when reviewing the denial of a motion for a new trial is, simply stated, to determine whether the trial court abused its discretion in doing so. *Sheffield v. State*, 749 So. 2d 123, 127 (¶16) (Miss. 1999). This is so for the exact reasons expounded in *Amiker*. It is the trial judge who sits and observes the evidence and witnesses' demeanor throughout the trial; who hears the witnesses' testimonies; and who, ultimately, is the closest thing a trial has to a "thirteenth juror." That title and point of view are simply inappropriate for an appellate court armed only with "a cold, printed record of a case."

My last point goes to the realistic ramifications of a reversal by an appellate court of a trial court's denial of a motion for a new trial. As touched upon in Justice White's dissent in *Tibbs*, given an appellate court's reversal on the weight of the evidence, "the defendant has already demonstrated that a conviction based on the State's case, as so far developed, is 'against the weight of the evidence.'" *Tibbs*, 457 U.S. at 50 (White, J., dissenting). Therefore, the State and trial court are put in a precarious situation on remand. Assuming the State chooses to prosecute again, with no better or worse evidence at its

disposal, and the defense does not make any substantive changes in its presentation of evidence or trial strategy, and the same result occurs, by the "rule of the case," the trial court is all but required to grant a second new trial. If not, when the defendant appeals his conviction arguing that the weight of the evidence is not sufficient and, of course, cites the reversal of his previous conviction as authority, an appellate court would similarly have no choice but to reverse and remand once more or be guilty of intellectual dishonesty.

The majority in *Tibbs* argues otherwise stating in response to Justice White's dissent that:

> Although reversal of a first conviction based on sharply conflicting testimony may serve the interests of justice, reversal of a second conviction based on the same evidence may not. While the interests of justice may require an appellate court to sit once as a thirteenth juror, that standard does not compel the court to repeat the role.

*Tibbs*, 457 U.S. at 43 n.18. However, in my opinion, this line of reasoning does nothing more than muddle and dilute the standard of review that an appellate court must apply. If there have been no substantive changes from one trial to the next and the same outcome is reached by a second jury, a failure on an appellate court's part to, once again, remand the case for a new trial can be viewed as nothing more than arbitrary and capricious. Quite clearly, all other things equal, if the weight of the evidence would not support a finding of guilt after the first conviction, the same evidence, when presented during subsequent trials, must still be deemed inadequate to support a conviction. Contrary to the statement quoted from *Tibbs* above, our role as an appellate court does not change.

Therefore, I respectfully suggest to the members of our appellate judiciary that we are not, and can never be, the hypothetical "thirteenth juror." The closest judicial entity identifiable as a possible "thirteenth juror" must be the trial judge. When we review a claim on appeal that the verdict is contrary to the weight of the evidence, we simply determine based upon the cold record whether the trial judge abused his discretion. Nothing more, nothing less.

*Hughes*, 43 So. 3d at 530-33 (¶¶17-25) (Roberts, J., specially concurring).

¶17.   If these are the correct criteria to review a motion for a new trial, we should ask why

the "thirteenth juror" analysis is not also part of the standard of review in civil cases. For

10

example, in *White v. Yellow Freight System, Inc.*, 905 So. 2d 506, 510-11 (¶7) (Miss. 2004), the supreme court considered a motion for a new trial and did not include a "thirteenth juror" discussion:

> A motion for a new trial falls within a lower standard of review than does that of a judgment notwithstanding the verdict or a directed verdict. [*Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 55 (Miss. 2004)]. Rule 59 of the Mississippi Rules of Civil Procedure authorizes the trial judge to set aside a jury verdict as to any or all parts of the issues tried and to grant a new trial whenever . . . justice requires. M.R.C.P. 59 cmt. The grant or denial of a motion for a new trial is a matter within the trial court's sound discretion. *Green v. Grant*, 641 So. 2d 1203, 1207 (Miss. 1994). A new trial may be granted in a number of circumstances, such as when the verdict is against the substantial or overwhelming weight of the evidence. *Shields v. Easterling*, 676 So. 2d 293, 298 (Miss. 1996); *see also* URCCC 10.05(2)[.] On appeal, this Court may reverse the granting of a new trial only when the trial court has abused its discretion. *Green*, 641 So. 2d at 1207. The existence of trial court discretion, as a matter of law and logic, necessarily implies that there are at least two differing actions, neither of which if taken by the trial judge will result in reversal. *Shields*, 676 So. 2d at 298. In reviewing the trial court's decision, an appellate court must consider the credible evidence in the light most favorable to the non-moving party and generally take the credible evidence supporting the claims or defenses of the non-moving party as true. *Green*, 641 So. 2d at 1207. When the evidence is so viewed, this Court will reverse only when, upon review of the entire record, we are left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. *Id.* at 1207-08.

¶18. When we review this case on an abuse-of-discretion standard, I find that the eyewitness's testimony was sufficient. I do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Bush*, 895 So. 2d at 844 (¶18). I would affirm Little's conviction. For these reasons, I dissent.

**FAIR AND WILSON, JJ., JOIN THIS OPINION**.