# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-01505-SCT

*MARLON LITTLE*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                      09/02/2014
TRIAL JUDGE:                           HON. LAMAR PICKARD
COURT FROM WHICH APPEALED: CLAIBORNE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     OFFICE OF THE STATE PUBLIC DEFENDER
                             BY: W. DANIEL HINCHCLIFF
                                 GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY:  JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:           ALEXANDER C. MARTIN
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 THE JUDGMENT OF THE COURT OF
                             APPEALS IS REVERSED.  THE JUDGMENT
                             OF THE CLAIBORNE COUNTY CIRCUIT
                             COURT IS REINSTATED AND AFFIRMED -
                             10/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Sitting as "thirteenth juror," the Court of Appeals reversed Marlon Little's convictions and remanded for a new trial, finding the weight of the evidence preponderated heavily against the verdict.  We granted certiorari to clarify the appellate court's role when reviewing

a motion for new trial. Despite this Court's prior language suggesting otherwise, neither this Court nor the Court of Appeals assumes the role of juror on appeal. We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

¶2.     Applying this standard, we find no reason to disturb Little's guilty verdict. Therefore, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Claiborne County Circuit Court.

**Background Facts and Procedural History**

### I.     Investigation and Conviction

¶3.     Nurse practitioner David Ellis was attacked from behind and robbed while leaving his medical clinic. Ellis reacted by swinging his computer bag at the assailant's head. During the struggle, Ellis fell down, and his attacker also stumbled. Ellis was on the ground when his attacker stuck a gun in Ellis's face. Ellis saw the man "square in the face" from about three feet away. The man demanded Ellis's wallet. Ellis complied. And the man fled.

¶4.     Ellis went straight to the Port Gibson Police. He described the robber as "a black male wearing all black with a hood over his head." His body type was "small." And he "actually could have been between 20 or better."

2

¶5.    A few days later, Police Chief Calvin Jackson received a tip from an informant. Based on this tip, Chief Jackson put Little's photo in a lineup. Chief Jackson presented the seven-photo lineup to Ellis. When Ellis saw the photo of Little, the fourth in the lineup, Ellis recognized him as the robber immediately. Little was indicted for armed robbery and tried a month later.

¶6.    The State called both Chief Jackson and Ellis as witnesses. Chief Jackson testified about the informant's tip connecting Little to the robbery. Based on this tip, he composed the photo lineup and showed it to Ellis. On cross-examination, Chief Jackson was asked about discrepancies between Ellis's initial description of his attacker given to the police and Little's actual physical characteristics. He was also asked about a later description given to a private investigator hired by Little's attorney. In Ellis's statement to Little's private investigator, Ellis said the robber was clean-shaven, while Little was known to have a goatee. Chief Jackson did not know if Little had facial hair when he was arrested. But Chief Jackson agreed with defense counsel that Little was not "stocky or muscular." Chief Jackson was also asked about Little's gold teeth and the fact Ellis never mentioned them to the private investigator. Chief Jackson did not recall any mention of Little's teeth in Ellis's initial description.

¶7.    When Ellis took the stand, he stated clearly and unequivocally that Little was man who robbed him. Ellis recognized Little based on Little's entire face, especially Little's pronounced facial creases. Drawing from his medical background, Ellis described Little's facial creases as "nasolabial folds." Ellis testified that he too shared the same physiological

3

feature. Ellis also told the jury that he recognized Little by his eyes. He remembered them because they were "scared-looking." He described Little as "slender but solid"—meaning Little was not easily moved or knocked down when Ellis struck him with the computer bag.

¶8.   When questioned by defense counsel, Ellis conceded that he probably had described the robber previously as "muscular and stocky" in the recorded statement to Ellis's investigator. Ellis explained that Little seemed "solid as a rock" when Little jumped him and grabbed him. As for Little's mouth, Ellis said he had not noticed Little's teeth because Ellis "had a .45 pistol stuck right there in my face." Ellis also was asked about the robber's age discrepancy. He described the robber to Chief Jackson as twenty years old "or better." And Little was actually thirty-nine at the time of the attack. To this, Ellis said he did not know how old Little actually was. He explained he was not a good judge of age.

¶9.   Little called no witnesses. The jury found him guilty of armed robbery and possession of a weapon by a convicted felon.[1]  He was sentenced to thirty years' imprisonment for armed robbery and ten years' for felon-in-possession, with his sentences to run concurrently. After his post-trial motions for judgment not withstanding the verdict and for a new trial were denied, he timely appealed.

##   II.    Court of Appeals' Decision

¶10.   Little's appeal was assigned to the Court of Appeals. Little raised one issue—that his conviction was against the weight of the evidence, requiring a new trial. In a six-three

---

[1]Before trial, Little stipulated he was a convicted felon.

opinion, the Court of Appeals reversed Little's convictions and remanded for a new trial. *Little v. State*, No. 2014-KA-1505-COA, 2016 WL 6876506 (Miss. Ct. App. Nov. 22, 2016).

¶11.    Quoting *Bush v. State*, 895 So. 2d 836 (Miss. 2005), the Court of Appeals majority described its appellate posture as that of "thirteenth juror." *Little*, 2016 WL 6876506, at \*2 (¶7). And in this role, "if it 'disagrees with the jury's resolution of the conflicting testimony,' the property remedy is to grant a new trial." *Id.* (quoting *Bush*, 895 So. 2d at 844).

¶12.    The appellate court majority found Ellis's initial identification conflicted with Little's "actual physical attributes, including age and build." *Id.* at \*2 (¶10). And because Ellis's identification of Little as the robber was the only substantive evidence against Little, the majority found a new trial was warranted. *Id.* at \*3 (¶11).

¶13.    The dissent disagreed with the majority's use of the "thirteenth juror" standard of review. *Id.* at \*3 (¶14) (Griffis, J., dissenting). The dissent quoted extensively from Judge Larry Roberts's special concurrence in *Hughes v. State*, 43 So. 3d 526, 530-33 (Miss. Ct. App. 2010). *Little*, 2016 WL 6876506, at \*\*3-6 (¶16) (Griffis, J., dissenting). In that case, Judge Roberts traced the history of the "thirteenth juror" language and explained how an appellate court, faced with a cold record, can never perform the function of "juror." *Hughes*, 43 So. 3d at 530-33 (Roberts, J., dissenting). Applying an abuse-of-discretion standard, the dissent in *Little* saw no abuse in the trial judge's denial of Little's motion for a new trial. *Little*, 2016 WL 6876506, at \*7 (¶18) (Griffis, J., dissenting).

¶14.    The State filed a petition for certiorari, which we granted to clarify *Bush*'s "thirteenth juror" language.

5

**Discussion**

¶15.    We take this opportunity to clarify that neither this Court nor the Court of Appeals ever acts as "juror" on direct appeal. "We sit as an appellate court, and as such are ill equipped to find facts." *Gavin v. State*, 473 So. 2d 952, 955 (Miss. 1985). "[E]ven if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review." *Id.*

¶16.    The concept of the appellate court acting as "thirteenth juror" was birthed in *Bush*. In that case, this Court sought to distinguish the standard of review for the denial of a motion for judgment notwithstanding the verdict, which challenges the sufficiency of the evidence, from the standard of review for the denial of a motion for a new trial, which challenges the weight of the evidence. *Bush*, 895 So. 2d at 843-45. In explaining the standard of review for the denial of a motion for a new trial, we borrowed language from *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942 (Miss. 2000):

> [T]he court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

*Bush*, 895 So. 2d at 844 (quoting *Amiker*, 796 So. 2d at 947).

¶17.    But as Judge Roberts pointed out in his special concurrence in *Hughes*, "[i]n *Amiker*, the central issue was whether a successor judge could vacate his predecessor's order granting a new trial." *Hughes*, 43 So. 3d at 531 (citing *Amiker*, 796 So. 2d at 946) (Roberts, J., specially concurring). And this Court concluded the predecessor trial judge, who sat through

6

trial and observed the witnesses first hand, was in a "superior position" to his successor, who only had "a cold, printed record of a case." *Amiker*, 796 So. 2d at 947-48.

¶18. This conclusion was based on the longstanding "recogni[tion] that the trial judge is in the best position to view the trial." *Id.* at 947. "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire." *Id.* (quoting *Gavin*, 473 So. 2d at 955). By contrast, a successor judge, who enters the fray after the battle, is "in no better position than this Court *to do what this Court does not do*." *Id.* at 948 (emphasis added). And what, according to *Amiker*, does this Court not do? "This Court justifiably refuses to review grants of a new trial based in part on the superior position of the trial court to decide such matters." *Id.*

¶19. In now revisiting *Amiker*, we agree with Judge Roberts that the "thirteenth juror" referred to the *trial court*—and the trial court alone. *See Hughes*, 43 So. 3d at 531-32 (Roberts, J., specially concurring). Thus, it was error in *Bush* to conflate our role as appellate court with the trial court's and to assume the role of "thirteenth juror" for ourselves when reviewing the trial court's grant or denial of a new trial. *See Bush*, 895 So. 2d at 844 n.2 (noting "when the trial court (and subsequently the appellate court) reviews a verdict that is alleged to be against the overwhelming weight of the evidence, this presents a distinctive situation which necessitates the court sitting as a 'thirteenth juror'").

¶20. To be clear, when reviewing a motion for new trial, neither this Court nor the Court of Appeals "sits as thirteenth juror." *Bush*, 895 So. 2d at 844. We do not make independent

7

resolutions of conflicting evidence. *See id.* Nor do we reweigh the evidence or make witness-credibility determinations. Instead, "when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." ***Gathright v. State***, 380 So. 2d 1276, 1278 (Miss. 1980); *see also* ***Lenoir v. State***, 222 So. 3d 273, 278 (Miss. 2017).

¶21. Our role as appellate court is to review the trial court's decision to grant or deny a new trial for an abuse of discretion. *See* ***Amiker***, 796 So. 2d at 948 (citing ***Dorr v. Watson***, 28 Miss. 383, 395 (1854) ("The granting a new trial rests in a great measure upon the sound discretion of the court below, to be exercised under all the circumstances of the case with reference to settled legal rules as well as the justice of the particular case. If a new trial be refused, a strong case must be shown to authorize the appellate court to say that it was error; and so, if it be granted, it must be manifest that it was improperly granted.")). In carrying out this task, we weigh the evidence in the light most favorable to the verdict, "only disturb[ing] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Lindsay v. State***, 212 So. 3d 44, 45 (Miss. 2017) (quoting ***Bush***, 895 So. 2d at 844).

¶22. Applying that standard here, we find no abuse of discretion in the trial court's denial of Little's motion for a new trial. Viewing the evidence in the light most favorable to the verdict, the trial court did not sanction an "unconscionable injustice" in ruling the judgment must stand. Ellis positively identified Little as the robber from a photo lineup and again from the witness stand. The conflicting portions of Ellis's descriptions were thoroughly presented

8

to the jury. And obviously the jury resolved these conflicts and concluded beyond a reasonable doubt that Little was the man who attacked Ellis, pointed a gun in his face, and robbed him.

¶23. We thus reverse the judgment of the Court of Appeals. And we reinstate and affirm the judgment of the Claiborne County Circuit Court, which convicted Little of armed robbery and felon in possession of a weapon and sentenced him to concurrent sentences of thirty years and ten years respectively.

¶24. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CLAIBORNE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**RANDOLPH, P.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. WALLER, C.J., AND ISHEE, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶25. I agree that, applying the appropriate standard of review, we must review the trial court's denial of a motion for a new trial for abuse of discretion and, considering the evidence in the light most favorable to the verdict, we "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005). But I respectfully decline to accept the majority's application of a new standard under which, on review of the weight of the evidence, this Court never weighs the conflicting evidence. An appellate court cannot determine whether a trial court correctly rejected a claim that a verdict

9

was against the overwhelming weight of the evidence without actually evaluating the weight of the evidence – a process that necessarily involves consideration of witness credibility.

¶26. I would find that, due to the paucity of evidence against Little, this is one of the exceptional cases in which the evidence preponderates so heavily against the verdict that the Court must order a new trial to prevent a miscarriage of justice. Further, I would find that plain error likewise demands a new trial. I would affirm the judgment of the Court of Appeals that reversed the judgment of the Circuit Court of Claiborne County and remanded for a new trial.

*A. Appellate Review of a Claim That the Verdict Was Against the Overwhelming Weight of the Evidence*

¶27. In ***Bush v. State***, this Court announced the proper standards for review of the weight of the evidence[2] and the sufficiency of the evidence to "demonstrate the clear difference between these issues." ***Bush***, 895 So. 2d at 843. The standard for weight of the evidence articulated in ***Bush*** is, in its entirety, as follows:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial,
>
>> the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should

___

[2] It has been said by the United States Supreme Court that "[t]he 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" ***Tibbs v. Florida***, 457 U.S. 31, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982).

> be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
>
> *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. *Herring*, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. *Id.* This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. *Id.* Instead, the proper remedy is to grant a new trial.

*Bush*, 895 So. 2d at 844. The Court then applied the standard to the facts of the case as follows: "[s]itting as a limited 'thirteenth juror' in this case, we cannot view the evidence in the light most favorable to the verdict and say that an unconscionable injustice resulted . . . [t]he trial court therefore did not abuse its discretion in denying a new trial . . . ." *Id.* at 844-45. The standard announced in *Bush* has been applied faithfully by our trial and appellate courts to resolve arguments based on the weight of the evidence for more than twelve years.

¶28.    As the majority recognizes, the "thirteenth juror" language derived from *Amiker*, which discussed the standard of review applied by the trial judge to a claim that the verdict was against the overwhelming weight of the evidence. *Amiker* held that a successor judge had erred by vacating his predecessor's order granting a new trial. Unlike an appellate judge or a successor judge, the trial judge had sat through the trial, had heard the witnesses, had observed their demeanors, and generally had "smelled the smoke of battle." *Amiker*, 796 So. 2d 942, 947 (Miss. 2000). The Court said that, on a motion for a new trial, the court sits as a thirteenth juror, the motion is addressed to the court's discretion, and the court should grant

11

a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (quoting *U.S. v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (quoting Wright, Federal Practice & Procedure: Criminal § 553, at 487)). A reading of *Amiker* indicates that, in saying that "the court sits as a thirteenth juror," the Court was referring to the trial court, not the appellate court or a successor judge.

¶29. So, as a technical matter, the Court in *Bush* erred by relying on *Amiker* to find that, on review of the trial court's denial of a motion for a new trial challenging the weight of the evidence, the appellate court sits as a thirteenth juror. But *Bush* made clear that the appellate court's standard of review of the trial court's decision is abuse of discretion, not *de novo*. Thus, it mattered little to post-*Bush* appellate review that the case directed an appellate court to sit as a "thirteenth juror" because, in each case, the appellate court was required to defer to the trial court's exercise of discretion in resolving the question of whether the verdict was against the overwhelming weight of the evidence.

¶30. Thus, removing the "thirteenth juror" standard from appellate review does little to erode our established appellate authority to grant relief based on a claim that the trial court erred by denying a motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence. The trial court sits as the "thirteenth juror" and must order a new trial only in those exceptional cases in which the evidence preponderates so heavily against the verdict that to affirm would be to sanction an unconscionable injustice. The evidence is to be viewed in the light most favorable to the verdict. And, as already

12

recognized in **Bush**, the appellate court reviews the trial court's denial of a motion for a new trial for abuse of discretion.

¶31.    I also note that, in **Bush**, this Court provided further direction for appellate review of the denial of a motion for a new trial based on the weight of the evidence. We correctly determined that, in prior weight-of-the-evidence cases, "we erroneously [had] stated that when reviewing the weight of the evidence, 'the Court must accept as true the evidence which supports the verdict,' the Court 'must accept as true the evidence favorable to the State,' and '[w]here there is conflicting testimony, the jury is the judge of the credibility of the witnesses.'" **Bush**, 895 So. 2d 844 n.3. While these pronouncements of law are pertinent in the context of reviewing the sufficiency of the evidence, they have no place in reviewing the weight of the evidence. **Id.** In ruling on the sufficiency of the evidence, we will affirm if, viewing the evidence in the light most favorable to the verdict, a rational jury could have found that each essential element of the crime was proven beyond a reasonable doubt. **Id.** at 843 (quoting **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In ruling on the weight of the evidence, the trial court must "weigh[] the evidence and assess[] the credibility of the witnesses in reaching its conclusion that the jury verdict was contrary to the weight of the evidence." **U.S. v. Robertson**, 110 F.3d 1113, 1118 (5th Cir. 1997).

¶32.    And, in reviewing the trial court's denial of a motion for a new trial based on the weight of the evidence, the appellate court also must weigh the evidence and assess witness credibility to arrive at a determination of whether the trial court's ruling was an abuse of

discretion. This Court cannot, as the majority suggests, simply check the trial record for conflicting evidence on each element of the crime and if such evidence is present, affirm the trial court. That would amount to our ruling on the sufficiency of the evidence. Rather, we must evaluate the weight of the evidence and the credibility of the witnesses as we undertake a determination of whether the trial court's ruling was an abuse of discretion. In order to decide whether the trial court correctly weighed the evidence and made the right judgment call, it is necessary that we weigh the evidence. Affirming based merely on the presence of conflicting evidence in the record is a ruling on the sufficiency of the evidence, not its weight.

¶33.     For that reason, the majority errs by affirming this case based solely on the presence of conflicting evidence in the record on the ground that it is the jury's role to resolve evidentiary conflicts. A challenge to the weight of the evidence, in which the trial judge must assess witness credibility and actually weigh the evidence, obviously necessitates judicial evaluation of the evidence before the jury. And on appellate review of the trial court's evaluation of the weight of the evidence, this Court also must evaluate the weight of the evidence and the credibility of the witnesses to determine whether the trial court abused its discretion by finding that the verdict was not so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. Of course, reversal based on a conclusion that the verdict was against the overwhelming weight of the evidence and that the trial court abused its discretion in denying a new trial is a rare event, reserved for exceptional cases in which the evidence preponderates so heavily against the

14

verdict that an affirmance would result in an unconscionable injustice. Little's case is one of the few exceptional cases in which the verdict should not stand.

*B. The verdict was against the overwhelming weight of the evidence.*

¶34. The evidence against Little established that, in Port Gibson, Mississippi, on the afternoon of October 31, 2013, nurse practitioner Danny Ellis was robbed after closing his office for the day. Ellis testified that the robber had attacked him from behind and wrestled him to the ground. Ellis swung his computer bag and struck the attacker's left ear. Then, the man stepped back, yelled "get on the ground," and put his knee on Ellis's chest, then aimed a pistol at his face. Ellis testified that at this point he saw the face of his attacker, whom he had never seen before. Ellis asked the man what he wanted, and the man replied that he wanted Ellis's wallet. Ellis gave it to him, and the man backed off. Then, the man stopped a few feet away, aimed the gun at Ellis, flinched in a manner that made Ellis think he was going to shoot him, and finally ran away.

¶35. Immediately, Ellis drove to the police station and reported the incident. Chief of Police Calvin Jackson testified that Ellis described the suspect as a small black male wearing all black clothing with a black hoodie over his head, and that the suspect was "twenty years old or better." Chief Jackson knew Little. Based on a tip from a confidential informant, Chief Jackson included Little in a photographic lineup with seven other persons, although he did not believe that Little fit the description Ellis had given. He presented the lineup to Ellis, who identified Little as the robber. Because the police conducted no further investigation, Ellis's identification testimony was the sole evidence against Little.

15

¶36.    Although in January 2014, the grand jury no-billed the charges, the prosecution did obtain an indictment against Little for armed robbery and possession of a weapon by a felon in April 2014. The trial occurred less than a month later. Little's request for a continuance to locate witnesses was denied. Chief Jackson and Ellis testified for the State and the defense called no witnesses; several potential defense witnesses either did not appear or could not be located before the trial.

¶37.    At the trial, Ellis acknowledged having given a description of the robber to Little's defense counsel in an audio recording. On the audio recording, Ellis had said that the robber was muscular and stocky. Both Chief Jackson and Ellis admitted that Little is neither muscular nor stocky. Ellis explained that he had given that description because, when the robber had wrapped his arms around him, he was "solid as a rock." He also said that the robber had been clean shaven. Chief Jackson testified that, ordinarily, Little wore a goatee, although he was unable to say whether Little had any facial hair at the time of his arrest. Chief Jackson also testified that Little has gold teeth which are clearly visible when he talks. He said that Ellis had never mentioned gold teeth in his description of the robber. When asked about the gold teeth, Ellis admitted that the harrowing situation had hampered his powers of observation, saying that he had not noticed anything about the robber's mouth because the robber had a .45 pistol aimed at his face.

¶38.    In his testimony, Ellis admitted that the robber's hoodie had been pulled down, obscuring a portion of his face. Yet Ellis professed "no doubt" that the robber was Little. He testified that he had identified Little from the photographic lineup based, in part, on Little's

16

pronounced nasolabial folds, or facial creases. Little was the only person in the lineup who had pronounced nasolabial folds. Ellis testified that he also identified Little based on his eyes, because the robber's eyes had been "scared-looking" and wide open, with a lot of white showing. Ellis acknowledged that, in court, Little's eyes were not opened wider than normal, and in the lineup photograph, they were almost shut.

¶39. Little was found guilty, and the trial court sentenced him to thirty years for armed robbery and ten years for possession of a weapon by a felon, to run concurrently. The Court of Appeals reversed Little's convictions upon a finding that the verdict was against the overwhelming weight of the evidence because "the sole substantive proof presented at trial was the testimony of the victim identifying the defendant, and the victim's initial description of the attacker to the police was inconsistent with that identification." *Little v. State*, 2016 WL 6876506, at *3 (Nov. 22, 2016).

¶40. The majority affirms Little's convictions on the basis that the trial court's denial of his motion for a new trial was not an abuse of discretion. The majority relies on the presence of conflicting testimony in the record to affirm. But as explained above, it is vital to this Court's application of the proper standard of review to weight-of-the-evidence claims that we not rely on the mere presence of conflicting testimony in the record, but that we also evaluate the weight of the evidence to determine whether the trial court's ruling was an abuse of discretion.

¶41. Here, the trial court did abuse its discretion by denying the motion for a new trial. The State's sole evidence against Little was Ellis's identification of him as the robber. But that

17

identification was manifestly unreliable. Ellis professed that the robber was "twenty years old or better," muscular and stocky, and clean shaven, while Little was thirty-nine years old, neither muscular nor stocky, and habitually wore a goatee. And the robber wore a hoodie that obscured a portion of his face. Chief Jackson acknowledged that Little's appearance did not match Ellis's description of the robber. Ellis identified Little based on a photographic lineup that was suggestive because Little was the only person in the lineup with pronounced nasolabial folds. Absolutely no evidence connected Little with the crime besides Ellis's identification. Considering the evidence in the light most favorable to the State, the fact that the only proof presented by the State was Ellis's identification testimony, and his initial description of the robber was strikingly inconsistent with Little's actual appearance, I would find that this case presents the exceptional instance in which an affirmance of the verdict would amount to our sanctioning an unconscionable injustice. This case provides ample cause for concern that an innocent man may be serving a substantial sentence for crimes that he did not commit.

*C. Chief Jackson's testimony about the informant's tip and improper closing argument demand reversal under the plain error doctrine.*

¶42. Another troubling consideration leads me to conclude that this verdict must be reversed. Chief Jackson testified that he had included Little in the photographic lineup based on a tip from an informant. During closing argument, the prosecutor asked the jury to consider the informant's tip as additional substantive evidence that Little had committed the crime. The prosecutor argued:

18

Calvin Jackson investigated it. He tells you he got an informant, a street committee. Street committee tells Calvin who does it, you know. So by that, Calvin doesn't go arrest him on that because he has no evidence. So he takes a lineup, and I think it's a fairly accurate lineup. But he puts Marlon in there because that's who he's been told did it. He takes it to Danny Ellis.

. . .

The man was in the picture lineup because Calvin Jackson was told that's who did it.

Defense counsel did not object to this argument, nor did the defense ever request a limiting instruction to prevent the jury's use of the informant's tip as substantive evidence of guilt.

¶43.    "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c). We have held that "[t]he conversation of an informant is generally inadmissible as hearsay where it is a part of the State's development of its proof on the merits in a criminal case, but not in other circumstances where probable cause for an arrest or search is at issue." *Swindle v. State*, 502 So. 2d 652, 657 (Miss. 1987). But "an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time." *Id.* at 657-58. Admission of an informant's tip for the truth of the matter asserted when the informant is unavailable for cross-examination is a violation of the Confrontation Clauses of the United States Constitution and the Mississippi Constitution.  U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

¶44.    While the purpose of Chief Jackson's testimony about the unknown informant's tip may have been to show why he included Little in the lineup despite the fact that Little's

19

physical description did not match Ellis's description of the robber, the impact of the testimony was to bolster Ellis's identification of Little. Doubtlessly, had defense counsel lodged Confrontation Clause and hearsay objections to this testimony, the trial court should have sustained the objections or at least excluded the testimony as more prejudicial than probative under Mississippi Rule of Evidence 403. Compounding the error, in closing argument, the prosecutor improperly encouraged the jury to consider the informant's tip as substantive evidence of Little's guilt. Because the entire case turned on identification evidence and the only substantive evidence identifying Little was Ellis's testimony, this argument falsely informed the jury that the "informant's tip" testimony functioned as additional substantive evidence identifying Little as the culprit.

¶45.  While the prosecutor is allowed to comment on the evidence and draw proper deductions and inferences from the facts, the prosecutor cannot "appeal to the prejudices of [jurors] by injecting prejudices not contained in some source of the evidence." *Wilson v. State*, 194 So. 3d 855, 864 (Miss. 2016) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000)). Attorneys are permitted wide latitude in closing argument, but "prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Sheppard*, 777 So. 2d at 661. When faced with a potential instance of lawyer misconduct during closing arguments, this Court inquires "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Galloway v. State*, 122 So. 3d 614, 643 (Miss. 2013).

¶46.    In this case, where the sole evidence against Little was Ellis's identification, the closing argument encouraging the jury to consider the informant's tip as further identification evidence was unjustly prejudicial and created the likelihood of a conviction that rested in significant part upon inadmissible hearsay. But because Little did not object to the admission of the informant's tip or to the prosecutor's closing argument, or raise either issue on appeal, this issue obviously would be procedurally barred from appellate review. However, "[u]nder the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant . . . and which affects a defendant's 'fundamental, substantive right.'" *Conners v. State*, 92 So. 3d 676, 682 (Miss. 2012) (quoting *Smith v. State*, 986 So. 2d 290, 294 (Miss. 2008)). For application of the plain error doctrine, there must have been an error that caused a manifest miscarriage of justice or "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Conners*, 92 So. 3d at 682 (quoting *Brown v. State*, 995 So. 2d 698 (Miss. 2008)). I would find that, because the sole evidence against Little was Ellis's identification, the admission of the informant's tip as additional substantive identification evidence, along with the prosecutor's closing argument that encouraged the jury to consider the informant's tip as further substantive identification evidence, a plain error occurred that caused a manifest miscarriage of justice and undermines the fairness, integrity, and public reputation of judicial proceedings.

¶47.    Not only was the verdict against the overwhelming weight of the evidence, but plain error resulted from the admission of the informant's tip and improper closing argument. I

would affirm the judgment of the Court of Appeals that reversed Little's convictions and remanded for a new trial.

**KING, J., JOINS THIS OPINION.**